GARRISON, Judge.
The defendant, Darryl Evans, was charged by grand jury indictment with the first degree murder of Travis Youmans in violation of LSA-R.S. 14:30. This indictment was later amended to charge the defendant with second degree murder in violation of LSA-R.S. 14:3o.!.[1] After the defendant was found guilty as charged, he was sentenced to serve life in prison with *675 out benefit of parole, probation or suspension of sentence. Defendant appeals.
On March 30, 1983 at approximately 2:50 a.m., the body of Travis Youmans was found in an elevator at the French Market Inn at 501 Decatur Street. Youmans, the night auditor/desk clerk of the hotel, died as a result of gunshot wounds to the head. His pants had been pulled down to his knees and his pockets had been turned inside out. Youman’s keys were missing but his wallet had not been taken.
Richard Coleman, the night bellman at the French Market Inn, testified that he and Youmans were on duty on the morning of March 30, 1983. He stated that the defendant, Darryl Evans, came into the hotel lobby between 1:30 a.m. and 2:00 a.m. on the morning in question. Coleman knew Evans because Evans had been a security guard at the Jackson Brewing Company across the street from the French Market Inn and had come over to the hotel several times before to chat and have a cup of coffee. After Coleman pressed a buzzer to let Evans into the lobby, Evans and Youmans visited in the lobby for awhile and then went to the back of the hotel into a courtyard which connected the two buildings of the hotel. Approximately twenty-five minutes later, Evans returned to the lobby alone. He stepped behind the front desk and started going through the drawers. Coleman noticed that Evans had money in one hand and that his other hand was in his pocket. When Coleman asked Evans what he was doing, Evans replied by asking Coleman if it was worth his life to know. Coleman answered that it was not and was then told by Evans to say nothing to the police about what he had seen. Evans told Coleman that Youmans was in the other part of the hotel talking to a hotel guest. Evans then instructed Coleman to get on the elevator. Coleman got on the elevator and rode to the fourth floor where he go off and went down the back steps to the courtyard in search of Youmans. Coleman continued through the courtyard to the other building of the hotel where he found Youman’s body in the elevator.
Coleman immediately notified the hotel’s resident manager, Robert Ridley. After the police arrived, Ridley discovered that the cash drawer at the front desk was unlocked and open and that approximately $500.00 had been taken. Ridley and a former desk clerk from the hotel testified that Youmans always kept the cash drawer key in his pocket and that he never left it in the drawer.
During an interview with police later that morning, Coleman told a detective that a man named “Dale Evans” was the person who entered the hotel lobby that morning, walked away with Travis Youmans and returned alone to the lobby where he took the money from the cash drawer at the front desk. Because Darryl Evans had been a security guard and therefore, had a special permit to carry a gun, the police had a photograph of Evans available in their files. When shown this photograph, Mr. Coleman confirmed that this was the man who entered the hotel lobby on the morning of March 30, 1983. At that time, an arrest warrant was issued for Darryl Evans. However, Evans was not arrested until October 21, 1983.
At trial, the defense presented several witnesses who attested to Evans’ good character. The defendant testified that he occasionally went to the French Market Inn while he was employed as a security guard at the Jackson Brewing Company across the street. However, he claims that he quit this job in February, 1983 and that he never again went to that hotel. The defendant claimed that Richard Coleman often slept on the job and that the hotel lobby door was frequently unlocked. Coleman contradicted the defendant’s testimony on rebuttal.
A review of the record reveals that there are no errors patent.
ASSIGNMENTS OF ERROR # 1 and 2
The defendant contends that the trial court erred in denying his request for either a copy or an in-camera inspection of the report of the coroner’s investigator. This request was made pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 *676 L.Ed.2d 215 (1963), which states that the prosecution must disclose to the defense evidence favorable to the defendant if such evidence is material to his guilt or punishment. Defendant was furnished with a copy of this report but the back page was partially obscured by an attached sheet which had been photocopied with this page. The defendant made a specific request for a copy or an in-camera inspection of the back page of this report in order to determine if the description given of the assailant differed from the defendant’s actual appearance.
The State contends that this report was the undiscoverable work product of the State. According to the State, the copy with the obscured back page was inadvertently given to the defense because the defense was not entitled to a copy of this report.
We find no merit in the State’s argument. Because the defense made a specific request for this allegedly exculpatory material, we conclude that the trial judge erred by not at least conducting an in-camera inspection of this portion of the report. Therefore, we remand this case to the trial court in order for the trial judge to conduct an in-camera inspection of the back page of the coroner’s investigator’s report in order to determine if it contains exculpatory Brady material as alleged by the defendant. If such evidence is found, a new trial should be ordered. If not, the defendant’s conviction should be reinstated.
ASSIGNMENT OF ERROR # 3
In this assignment, the defendant contends that the trial court erred in denying the defendant’s pre-trial motion to order the State to furnish the defense with rapsheets on the State’s witnesses. A review of the record indicates that the State made no response to this pre-trial motion. The defendant admitted that he did not know whether or not any rapsheets existed for these witnesses. However, the defendant argues that if these rapsheets existed and were in the possession of the state, he should have been allowed access to this information prior to trial in order to impeach the State’s witnesses at trial. He claims that the State has an unfair advantage because it has access to the Police Department computer system.
The Louisiana Supreme Court has held that prior criminal records of prospective State witnesses are exculpatory evidence under Brady v. Maryland, supra, only when these witnesses were involved with the defendant in the commission of the crime. State v. Williams, 389 So.2d 60 (La.1980). See also State v. Whitlock, 454 So.2d 871 (La.App. 4th Cir.1984). The court in Williams held that even if State witnesses (who were not co-defendants or co-conspirators) had criminal convictions, that evidence would not be relevant to the question of the defendant’s guilt. Additionally, a review of the record in this case indicates that the outcome of this trial would not have been affected even if this information had been given to the defendant. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Therefore, this assignment of error is without merit.
ASSIGNMENT OF ERROR # 4
The defense contends that the trial court erred in failing to order the State to furnish the defense with a copy of the police report used to refresh the memory of Officer Coffey at trial. This request was made because of Officer Coffey’s admission that she had reviewed her police report prior to her testimony at trial. The defendant contends that this report may have resolved a possible discrepancy between the description of the assailant offered by Richard Coleman and the actual appearance of the defendant.
LSA-R.S. 15:279 provides as follows:
A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner’s investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact.
*677 The case of State v. Prudholm, 446 So.2d 729 (La.1984), holds that production of police reports is not mandated when used by the witness to refresh his or her memory prior to trial. The State is not required to produce for inspection a police report for use in cross-examination of a State witness for impeachment purposes unless: (1) the witness has physical possession of the report on the stand and testified from it; or (2) the witness testified exclusively from his past recollection recorded even though he does not have physical possession of the report on the stand; or (3) it is established that there is an inconsistency between the witness’ testimony at trial and his prior statement. State v. Johnson, 438 So.2d 1091 (La.1983).
There is no indication that any of these circumstances are present in the instant case. Although the defense has expressed a hope that Officer Coffey’s report might differ from her testimony at trial, there is no indication that such a discrepancy did exist. Because the trial judge did not err in refusing to order production of this police report, this assignment of error is without merit.
ASSIGNMENT OF ERROR # 5
The defense contends that the trial court erred in admitting evidence of an allegedly improper and overly suggestive photographic identification procedure used by the police. In answer to the defense’s pre-trial motion to suppress the identification, the State responded that a photographic identification procedure was not actually used in this case; rather, a photograph of the defendant was shown to the witness only to confirm the identity of the person whose name was supplied by this witness.
At trial, Detective Dillman testified that Richard Coleman told him that the name of the perpetrator was James Evans. Coleman testified that he told Dillman that the perpetrator’s name was Dale Evans; however, Coleman also stated that Evans did tell him at one time that his first name was James. Coleman also testified that he did not recall describing the assailant prior to being shown Evans’ photograph.
Because of the above testimony, the defendant claims that the identification was tainted. However, in addition to this testimony, Coleman also stated that he recognized Evans when he entered the hotel lobby that morning because Evans occasionally visited the lobby of the French Market Inn while on duty as a security guard at the Jackson Brewery. Therefore, because Coleman was acquainted with Evans prior to this incident, the showing of only one photograph to corroborate Coleman’s identification of the perpetrator of this crime was not error. This assignment of error is without merit.
ASSIGNMENT OF ERROR # 6
In his final assignment of error, the defendant contends that the trial court erred in failing to grant a new trial in that there was insufficient evidence to support a lawful conviction. To test the sufficiency of evidence, the court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational juror to find that the defendant was guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, in a case such as this where circumstantial evidence is used to convict the defendant, the court must find that the evidence excludes every reasonable hypothesis of innocence. LSA-R.S. 15:438. See also State v. Camp, 446 So.2d 1207 (La. 1984).
Richard Coleman testified that he let the defendant, whom he knew, into the hotel lobby by pressing a buzzer to unlock the door. This was the only door through which anyone could enter or exit after dark and Coleman testified that no one else entered the hotel lobby during the period in which this murder occurred. Although there is no direct evidence that Evans shot Youmans, Coleman did see Evans leave with Youmans, return alone, and unlock the cash drawer with a key which two witnesses testified was always kept in You-man’s pocket. Coleman watched Evans *678 rob the drawer and was threatened by Evans. There was also circumstantial evidence that Evans had a gun at this time because he kept one hand in his pocket while he took the money and threatened Coleman.
The defendant argues that he could not have killed Youmans because Youmans was still gasping for breath when Ridley returned to the elevator with Coleman within minutes of Coleman’s initial discovery of Youmans. However, the coroner estimated that it would take approximately ten minutes to die from the type of wounds sustained by Youmans. Therefore, because Coleman ran to Ridley’s room and Ridley hurriedly dressed and went to You-man’s body, the jury could have placed the defendant at the scene of the shooting.
No one else entered the hotel during the twenty-five minutes between the time Evans and Youmans left the lobby and Evans returned alone. Defendant’s theory that Youmans could have been killed by a hotel guest is not a reasonable hypothesis of innocence. The evidence in this case was sufficient for a jury to find that the defendant was guilty beyond a reasonable doubt.
For the reasons assigned, defendant's conviction and sentence are conditionally affirmed. The case is remanded to the trial court for an in-camera inspection of the back page of the coroner’s investigator’s report to determine if exculpatory Brady material exists. We reserve unto the trial court the authority to grant a new trial herein and we reserve the defendant’s right to appeal from any adverse ruling by the trial court.
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED: CASE REMANDED.

. LSA-R.S. 14:30.1 states:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.