liPRICE, Judge Pro Tem.
The state charged defendant-appellant, TLV, by separate petitions, with attempted purse snatching and second degree battery as a result of his August, 1993 actions against Elizabeth Jackson. Since the two petitions arose from the same incident, were tried together, and presented the same issues for review, this court consolidated the appeals as moved by defendant. TLV acknowledged the allegations of the petitions to be true and the juvenile court found him to be delinquent. The juvenile court entered an order of disposition in January, 1994, which sentenced TLV to the custody of the Louisiana Department of Public Safety and Correction for consecutive terms of three years for the attempted offense, and one year for the battery. On appeal, TLV challenges the sentences as excessive and urges that the juvenile court erred by failing to apply the Louisiana Sentencing Guidelines which became effective on January 1, 1992. For the reasons assigned we affirm the adjudication and disposition.

BACKGROUND

On the day prior to the subject incident, TLV and another juvenile began planning how they would obtain money by purse snatching. They executed their plan the next day by laying in wait near Mall St. Vincent in Shreveport until an appropriate victim came along. They watched and followed several people, but decided against attacking them. Finally, the juveniles saw 75-year-old Elizabeth Jackson and selected her as their victim. They approached her ear when she pulled into the parking lot, but she locked the door and they were unsuccessful in entering the vehicle. After TLV and his accomplice left the area, the victim felt safe to go into the mall. As she walked away from her car, TLV and his cohort approached the victim and tried to take her purse. TLV hit the victim in the head, causing a 12wound which required 21 stitches, and knocked her to the concrete, breaking her arm. Witnesses saw the young men run into a particular apartment.
The resident of the apartment identified TLV and his companion and told the investigating detective that they had told him they were involved in the purse snatching, and that TLV had admitted that he had struck the victim. At the detective’s request, the apartment resident notified TLV to turn himself in to the authorities. TLV did so, and in the presence of his mother, confessed to having attacked Ms. Jackson.

DISCUSSION

TLV urges on appeal that the juvenile court should have applied the Louisiana Felony Sentencing Guidelines (FSG), that even if they do not apply, his sentence is excessive, that the court failed to adequately express its reasons for sentence, and that the sentence is excessive and should be concurrent rather than consecutive.
TLV’s counsel concedes there is no direct authority for the proposition that the FSG must be applied to juvenile proceedings. Prior to the enactment of the FSG, the jurisprudence was clear that the sentencing guidelines of LSA-C.Cr.P. Art. 894.1 did not apply to juvenile proceedings.
See State in the Interest of Winstead, 385 So.2d 311 (La.App. 1st Cir.1980). The court stated that the sentencing guidelines in the code of criminal procedure did not apply to juvenile proceedings; rather the provisions of the Code of Juvenile Procedure (C.J.P.) governed sentencing. The court also noted that due to the special nature of juvenile proceedings, much discretion is given to the juvenile court by the articles of the code.
| aAlso in State v. R.B., Jr., 595 So.2d 702 (La.App. 5th Cir.1992) the disposition hearing took place in August, 1991, which was before the new sentencing guidelines went into effect. The court held that the trial court was not required to- follow the guidelines of the C.Cr.P., but should follow the articles of the C.J.P. The court stated that when excessive commitment is the issue on appeal of a juvenile proceeding, the record must show that the juvenile court imposed the least restrictive disposition consistent with the circumstances of the ease, the needs *292 of the child, and the best interest of society. That guideline is now codified in Art. 901 B of the Children’s Code.
To support his claim that the Felony Sentencing Guidelines should govern sentencings in juvenile proceedings, defendant refers to this court’s opinion in State in the Interest of KH, 612 So.2d 1036 (La.App. 2d Cir.1993). There, the juvenile committed simple burglary of an inhabited dwelling after the FSG went into effect. This court noted that Article 901 of the Children’s Code provides the general sentencing guidelines for juvenile cases. A footnote stated that the act of the Legislature which added Article 901 “statutorily repealed prior jurisprudence which generally held that the sentencing criteria of LSA-C.Cr.P. Art. 894.1 were inapplicable to juvenile proceedings.” This court went on to say that since subparagraphs C and D of Art. 901 derive directly from LSA-C.Cr.P. Art. 894.1, “we deem it appropriate to review the instant disposition following the test used in adult cases construing LSA-C.Cr.P. Art. 894.1.”
This court then found that the trial court’s brevity in pronouncing his disposition presented less than full compliance with the requirements of Ch.C. Arts. 901 and 903. However, the record presented sufficient facts to show an adequate factual basis for the sentence imposed. Thus, this case did not hold that the ^guidelines of 894.1 apply to juvenile proceedings, but that the analysis used for reviewing sentences under that article also would be applied to an analysis of a sentence imposed under Ch.C. Arts. 901 and 903. We do not therefore find any merit in appellants argument that the juvenile court must follow the Felony Sentencing Guidelines in arriving at its disposition.
Turning then to an analysis of the guidelines of Ch.C. Art. 901, it is noted that paragraph D thereof states that the grounds listed there, “while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of the disposition.” As required by the two-pronged test for excessiveness, the record here shows that the defendant was a 10th grade student at Booker T. Washington high school. He was passing his courses and even had a “B” in world geography. He apparently had complied with the house arrest order pending the hearing date. Defendant told the court he was sorry for the victim and he wrote an apology letter to the victim. The court found defendant came from a good family. However, the court also found that defendant and his companion planned the event for some time and lay in wait for their victim who was an elderly person. The court considered that the act endangered human life and caused grave harm to the victim. The court made specific findings under Art. 901 C that the child needed correctional treatment in a custodial environment, that this was needed to protect the public, and that a lesser sentence would deprecate the seriousness of the delinquent act.
It seems obvious from the juvenile court’s discussion of the offense that the court found the delinquent conduct could be contemplated to cause or threaten harm, that there was no strong provocation, that there were no grounds tending to justify the conduct, and that the victim neither induced nor facilitated the offense.
IsThe court also conducted a hearing on counsel’s motion to reconsider the disposition. Defense counsel ensured that the court was aware that defendant had cooperated in this matter with the authorities. In response to counsel’s request that the sentences be served concurrently, the court said it was aware of the cooperation, but had to consider defendant’s interests as well as the public’s. The court pointed out that the defendant planned the attack on an elderly lady, and that the attack caused “grave injury”. The court said it felt that this was a minimal sentence, and pointed out that how the defendant responded to treatment would affect how long he actually stays with the department of corrections. Ch.C. Art. 905 provides that any institution or agency to which a child is assigned will provide progress reports to the court at least every six months. Articles 909 and 910 provide modification authority and procedures, which can include suspension of all or part of any order of commitment.
*293 When two or more adult convictions arise from the same act or transaction, the terms of imprisonment normally shall be served concurrently unless the court, in the exercise of its discretion, directs that some or all be served consecutively. LSA-C.Cr.P. Art. 883; State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988). Concurrent sentences arising from a single course of conduct are not mandatory, State v. Pickett, 628 So.2d 1333 (La.App.2d Cir.1993), and consecutive sentences under those circumstances are not necessarily excessive. State v. Ortego, 382 So.2d 921 (La.), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Williams, 445 So.2d 1171 (La.1984); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.), writ denied, 508 So.2d 65 (1987). All factors are to be considered, including the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir.), writ denied, 496 So.2d 355 (1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.), writ denied, 435 So.2d 433 (1983); and the defendant’s apparent disregard for the property of others, State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987). Here, the trial court apparently was swayed by the facts that defendant planned the purse-snatching offense in advance, but then resorted to violence and inflicted severe injuries when his elderly victim proved less complacent than he had hoped. Defendant, had he been an adult, would have faced up to ten years on the attempted purse snatching and up to five years for the simple battery. The disposition imposed is in the far lower range of what an adult would have faced.
Winstead, swpra, affirmed consecutive sentences for multiple criminal acts committed as part of one continuous transaction. Under the circumstances of this ease, it does not appear that the disposition is a needless infliction of pain and suffering, nor that it is grossly out of proportion to the seriousness of the offenses.
No error patent was noted by our examination of the record.
Defendant has not shown a manifest abuse of discretion by the juvenile court and, therefore, the juvenile delinquency adjudication and disposition are
AFFIRMED.