Judgment rendered August 27, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,038-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA
IN THE INTEREST OF
C.P.G.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 21,940

Honorable Sharon I. Marchman, Judge

* * * * *

LAVALLE B. SALOMON

Counsel for Appellant,
C.P.G.

JOHNNY L. SANDERS, II
Assistant District Attorney

Counsel for Appellee,
State of Louisiana

HEATHER S. COURTNEY

Counsel for Appellee,
Office of Juvenile Justice

* * * * *

Before GARRETT, McCALLUM, and THOMPSON, JJ.

**GARRETT, J.**

The juvenile, CPG, entered an admission to the offense of negligent homicide and was adjudicated a delinquent. The trial court ordered him to serve five years in secure custody. CPG appealed, arguing that the disposition is excessive. For the following reasons, we vacate a stay previously granted in this matter and affirm the adjudication and disposition.

### FACTS

On February 23, 2018, thirteen-year-old CPG claimed to have a sore throat and stayed at home with an older brother instead of going to school.[1] During the day, the brothers accessed various guns belonging to their stepfather and shot them out the back door of the house. That afternoon, 17-year-old AN was picked up from work by a friend, they purchased marijuana, and went to CPG's house to smoke it.[2] CPG's brother had a 9 mm gun and laid it on a table while he went outside to retrieve his dog. CPG picked up the gun, went outside, and sat in the backseat of a vehicle with AN. AN asked if the gun was real. CPG waved the gun around and pulled the trigger. AN was struck in the head with a bullet and died at the scene. CPG claimed that he did not know the gun was loaded.

On March 19, 2018, a "Petition to Declare a Minor to be Delinquent" was filed against CPG, charging him with negligent homicide, a violation of La. R.S. 14:32.[3] Six additional petitions were also filed against CPG. He

---

[1] CPG's date of birth is October 7, 2004.

[2] In order to maintain the confidentiality of the proceedings, as required by La. Ch. C. art. 412, we will use initials for all of the juveniles involved.

[3] La. R.S. 14:32 provides that negligent homicide includes the killing of a human being by criminal negligence. Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. La. R.S. 14:12.

was charged with five counts of simple burglary, three counts of theft of a firearm, and one count of felony theft. These offenses arose from a series of vehicle burglaries in which firearms and other property were stolen.[4] CPG was arraigned on March 22, 2018, and was released on bond. He appeared in court on May 24, 2018, and a drug test was ordered. CPG tested positive for marijuana. His bond was revoked and he was placed in detention.

On June 21, 2018, CPG appeared in court and entered an admission to negligent homicide.[5] He was advised of his rights, and was told that the maximum sentence for this offense was five years. He acknowledged that there was no agreed upon sentence. The trial court found that CPG knowingly, intelligently, and voluntarily entered the admission and found there was a factual basis for the admission. The trial court ordered a predisposition investigation ("PDI") report. The trial court also asked that CPG's mother and stepfather submit to drug screening. The stepfather's test was negative, but the mother tested positive for marijuana.

On July 30, 2018, CPG appeared before the court and was ordered to serve five years in secure care, with credit for time served. CPG appealed the disposition, arguing that it is excessive. The Office of Juvenile Justice ("OJJ") also appealed, arguing that the trial court did not have the authority to order that CPG be placed in secure care. The OJJ asserted that only the Department of Public Safety and Corrections can determine the most appropriate placement, care, and treatment of the juvenile. The OJJ sought a stay of the secure care order pending the appeal.

_____

[4] The record indicates that CPG's older brother was also involved in these offenses.

[5] The remaining charges were dismissed in August 2018.

2

The trial court granted the appeal of both CPG and the OJJ, but denied the stay of the order of secure care. The OJJ filed a writ application to this court seeking a stay of the juvenile court's order to place CPG in secure care. On August 17, 2018, in 52,476-JWC, this court granted the stay.

The juvenile court ordered CPG and the OJJ to appear for a hearing pursuant to La. C. Cr. P. art. 914.1(C)(3), because they had both failed to pay the fees for obtaining transcripts for their appeals. A hearing was held in October 2018. At that time, both parties had paid the transcript fees. The transcript fees for both CPG and the OJJ were due on or before August 30, 2018. The check from the OJJ was received by the Ouachita Parish Clerk of Court's office on September 14, 2018. The check from CPG was received on September 24, 2018. Both parties offered explanations for the delays in the checks reaching the clerk of court's office. However, because the fees were not paid in a timely fashion, the trial court dismissed the appeals. Both CPG and OJJ filed notices of intent to apply for supervisory writs to this court. Only CPG actually filed a writ application. On February 22, 2019, in 52,760-JWC, this court granted CPG's writ, reinstating the appeal. Because the OJJ did not apply for a writ from the dismissal of its appeal, the trial court judgment dismissing its appeal is final.[6]

---

[6] Before the dismissal of its appeal, the OJJ argued that the juvenile court could recommend, but did not have the authority to order, that CPG be held in a secure placement. Even though the OJJ did not have its appeal reinstated, it filed a brief in this matter, making this argument. Under the circumstances presented here, this issue is not properly before us on appeal. We also observe that CPG has not asserted this argument. Even if this issue were properly before us for review, no error is detected in the juvenile court's order. *See State in Interest of G.P.*, 2018-675 (La. App. 3 Cir. 9/20/18), 255 So. 3d 1130.

## EXCESSIVE DISPOSITION

CPG asserts that the disposition imposed is excessive. He maintains that the juvenile court did not comply with the sentencing guidelines of the Louisiana Code of Criminal Procedure and the Louisiana Children's Code by failing to adequately articulate for the record the factual basis for the imposition of the maximum sentence in this case. CPG also urges that the juvenile court failed to address and consider factors and circumstances in mitigation which would compel a lesser sentence than that imposed. These arguments are without merit.

### Legal Principles

The Louisiana Children's Code provides the procedures and requirements for adjudicating juveniles as delinquents and determining their disposition after adjudication. All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to jury trial, shall be applicable in juvenile court proceedings. *See* La. Ch. C. art. 808. A delinquency proceeding shall be commenced by a petition. La. Ch. C. art. 842.

Regarding the answer to the petition, La. Ch. C. art. 855 provides, in part:

> A. When the child appears to answer the petition, the court shall first determine that the child is capable of understanding statements about his rights under this Code.
>
> B. If the child is capable, the court shall then advise the child of the following items in terms understandable to the child:
>
> (1) The nature of this delinquency proceeding.
>
> (2) The nature of the allegations of the petition.
>
> (3) His right to an adjudication hearing.

4

(4) His right to be represented by an attorney, his right to have counsel appointed as provided in Article 809, and his right in certain circumstances authorized by Article 810 to waive counsel.

(5) His privilege against self-incrimination.

(6) The range of responses authorized under Article 856.

(7) The possible consequences of his admission that the allegations are true, including the maximum and minimal dispositions which the court may impose pursuant to Articles 897 through 900[.]

La. Ch. C. art. 856 provides, in pertinent part:

A. After the child has been advised pursuant to Article 855, the court shall inquire how the child responds. The child may:

. . . .

(3) Admit the allegations of the petition, in which case the court shall further inquire to determine whether there is a factual basis for adjudication. If so, the court may then adjudicate the child delinquent.

Prior to entering a judgment of disposition, the court shall conduct a disposition hearing. *See* La. Ch. C. art. 892. Regarding the disposition hearing, La. Ch. C. art. 893 states:

A. At the disposition hearing, unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or rehabilitation and shall make and file its findings.

B. All evidence helpful in determining the proper disposition, including oral and written reports, the report of the predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its probative value even though not admissible at the adjudication hearing. Upon motion of the district attorney or the child, the court may hear testimony from the victim of the offense.

C. Counsel for the state and for the child shall be afforded an opportunity to present evidence and to examine and controvert written reports so received and to cross-examine individuals preparing the reports or other witnesses who give testimony at

5

the hearing. Sources of confidential information need not be disclosed.

D. If the court finds that the child is in need of treatment or rehabilitation as a delinquent child, the court shall proceed immediately to make any appropriate disposition authorized by Articles 895 through 899.

The duration of the disposition is governed by La. Ch. C. art. 898, which states, in pertinent part:

A. Notwithstanding any other provision of law to the contrary, no judgment of disposition shall remain in force for a period exceeding the maximum term of imprisonment for the felony forming the basis for the adjudication. The court shall give a child credit for time spent in secure detention prior to the imposition of disposition.

Generally, the maximum term of incarceration for negligent homicide is five years, with or without hard labor. *See* La. R.S. 14:32.

The guidelines for disposition are set forth in La. Ch. C. art. 901:

A. Except as provided in Article 897.1, in considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.

B. Except as provided in Article 897.1, the court should impose the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.

C. Except as provided in Article 897.1, commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists:

(1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.

(2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.

(3) A lesser disposition will deprecate the seriousness of the child's delinquent act.

(4) The delinquent act involved the illegal carrying, use, or possession of a firearm.

D. Except as provided in Article 897.1, the following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of the disposition or probation:

(1) The child's delinquent conduct neither caused nor threatened serious harm.

(2) The child did not contemplate that his delinquent conduct would cause or threaten serious harm.

(3) The child acted under strong provocation.

(4) There were substantial grounds tending to excuse or justify the child's delinquent conduct, though failing to establish a defense.

(5) The victim of the child's delinquent conduct induced or facilitated its commission.

(6) The child or his family has compensated or will compensate the victim of his delinquent conduct for the damage or injury that the victim sustained.

(7) The child has no history of prior delinquency or has led a law-abiding life for a substantial period of time before the commission of the instant delinquent act.

(8) The child's delinquent conduct was the result of circumstances unlikely to recur.

(9) The character and attitudes of the child indicate that he is unlikely to commit another delinquent act or crime.

(10) The child is particularly likely to respond affirmatively to probationary treatment.

(11) The commitment of the child would entail excessive hardship to himself or his family.

. . . .

F. The court shall notify the child in writing of the expungement and sealing procedures set forth in Article 917 et seq.

A juvenile has the same constitutional rights against excessive punishment as an adult. *See* La. Ch. C. art. 808; *State in Interest of D.L.S.*, 30,322 (La. App. 2 Cir. 1/21/98), 706 So. 2d 187; *State in Interest of T.L.*, 28,564 (La. App. 2 Cir. 5/8/96), 674 So. 2d 1122. Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "[n]o law shall subject any person to cruel, excessive, or unusual punishment."

A sentencing judge does not possess unbridled discretion to impose a sentence within statutory limits, regardless of mitigating facts. La. Const. art. 1, § 20. Paragraph D of La. Ch. C. art. 901 lists the mitigating factors for the court's consideration in fashioning an appropriate disposition for a juvenile and states the grounds which, while not controlling the discretion of the court, shall be accorded weight in the determination of suspension of the disposition or probation. *State in Interest of C.B.*, 52,245 (La. App. 2 Cir. 6/27/18), 251 So. 3d 562.

In *State in the Interest of T.L.*, *supra*, this court stated that the judge adjudicating a child delinquent should impose the least restrictive disposition consistent with the circumstances of the case, the needs of the child, and the best interest of society. In any review for constitutional excessiveness, the appellate court must first ascertain whether the lower tribunal took cognizance of the circumstances of the case, the needs of the child, and the best interest of society, and whether the record reflects an adequate factual basis for the commitment imposed. *State in Interest of C.B.*, *supra*; *State in the Interest of T.L.*, *supra*. The test to be used in deciding whether the sentence imposed was excessive requires consideration of whether the sentencing judge took cognizance of the guidelines' criteria and whether the sentence was too severe in light of the circumstances and the juvenile's

8

background. Absent a showing of manifest abuse of this wide discretion, the disposition in a juvenile delinquency proceeding will not be set aside as constitutionally excessive. *State in Interest of C.B.*, *supra*. *See also State v. Q.U.O.*, 40,052 (La. App. 2 Cir. 6/29/05), 907 So. 2d 221; *State in Interest of D.L.S.*, *supra*; *State in the Interest of T.L.*, *supra*.

**Discussion**

Our review of the record fails to show that the disposition imposed was excessive. The juvenile court considered the disposition guidelines of La. Ch. C. art. 901, and fully and completely stated for the record the factual basis for the disposition imposed. In formulating the disposition, the juvenile court considered the applicable mitigating factors.

In this matter, the juvenile court complied with the requirements of La. Ch. C. arts. 855 and 856 regarding CPG's answer to the petition against him and his admission to the allegations contained therein. CPG appeared for his disposition hearing on July 30, 2018. The hearing was conducted in accordance with La. Ch. C. art. 892. CPG read into the record a statement previously furnished to the court, expressing regret over the death of AN. He claimed that the shooting was an accident and asked the victim's mother to forgive him.

Before imposing a disposition, the juvenile court noted that a PDI was prepared in this case, which the court reviewed, along with letters from the victim's family and letters in support of CPG. The juvenile court also reviewed the police, autopsy, and toxicology reports.

The juvenile court recognized that in *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), and *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the United States Supreme

9

Court noted that the lack of maturity and undeveloped sense of responsibility in children leads to recklessness, impulsivity, and heedless risk-taking. Children are more vulnerable to negative influences and outside pressures. The Supreme Court recognized that the distinctive attributes of youth diminish the penological justification for imposing the harshest sentences on juvenile offenders.

The juvenile court then fully complied with La. Ch. C. art. 901 in formulating the disposition and in extensively articulating the factual basis for the disposition imposed.[7] The juvenile court also considered mitigating factors such as CPG's age and lack of a prior criminal history. The court recognized that CPG was 13 years old and mostly an A/B student in school. There was no indication that he had special needs or diminished capacity. The juvenile court considered that CPG did not have a prior criminal history, but, at the time of the disposition hearing, he had pending charges for five counts of simple burglary, three counts of theft of a firearm, and one count of felony theft.

The juvenile court found that CPG was culpable on the day of the offense. CPG had previously been instructed in gun safety, had experience hunting, and had actually handled the weapon involved in this offense earlier that day, when he painted the sights. Shortly before the shooting, CPG picked up the weapon and took it to a car where he intended to smoke marijuana. At the time of this offense, CPG chose to point the gun in AN's

---

[7] CPG argues that the juvenile court failed to comply with La. C. Cr. P. art. 894.1, as well as La. Ch. C. art. 901 in formulating the disposition. However, in juvenile dispositions, La. Ch. C. art. 901 applies, not the sentencing guidelines contained in La. C. Cr. P. art. 894.1. *See State in Interest of T.L.V.*, 26,461 (La. App. 2 Cir. 9/21/94), 643 So. 2d 290.

direction and pull the trigger without checking to ensure that the gun was not loaded. The juvenile court found that these factors established that CPG knew what he was doing when he pointed the gun toward AN and pulled the trigger. The juvenile court stated that CPG exhibited a complete and utter disregard for the value of the life of another human being he considered to be a friend.

In examining CPG's family background, the juvenile court noted that neither CPG's mother nor the stepfather had a prior criminal history, although his biological father had a criminal history. However, the juvenile's mother tested positive for marijuana earlier in these proceedings. The juvenile court noted that CPG's older brother had a criminal history, used marijuana in the home, and was actually a codefendant with CPG in the other charges mentioned above, including multiple burglaries and thefts of firearms.

The juvenile court was required to impose the least restrictive disposition authorized by La. Ch. C. arts. 897-900, consistent with the circumstances of the case, the needs of the child, and the best interest of society. In articulating the considerations for the disposition, as required by La. Ch. C. art. 901, the court found that the safety and protection of the public could not be adequately safeguarded without removing CPG from the home. The court determined that the circumstances of this case, the needs of the child, and the best interest of society required that CPG be committed to the custody of the Louisiana Department of Public Safety and Corrections.

The court concluded that there was an undue risk that, during a period of a suspended disposition or probation, the child would commit another

crime. The juvenile court pointed out that, while released on bond, CPG used marijuana, resulting in the revocation of his bond.

The juvenile court stated that CPG was in need of correctional treatment or a custodial environment most effectively provided by his commitment. The court noted the inadequate supervision by the juvenile's mother and stepfather, free access to firearms in the home, and negative peer influences.

The juvenile court concluded that a lesser disposition would deprecate the seriousness of CPG's delinquent act. The court pointed out that, due to CPG's behavior, a 17-year-old lost her life. The court found that CPG's conduct caused or threatened serious harm and that CPG contemplated that his delinquent act would cause or threaten serious harm.

The juvenile court did not find that CPG acted under strong provocation or that any substantial grounds existed which would tend to excuse or justify this delinquent conduct.

CPG skipped school and played with guns on the day of the offense; he smoked marijuana the night before. He intended to smoke marijuana on the afternoon of the offense. The juvenile court pointed out that, although CPG denied using marijuana on the day of the offense, the investigating officer stated that the house clearly smelled of marijuana.

The juvenile court examined whether the victim induced or facilitated the commission of the delinquent act. CPG's parents suggested that AN nudged CPG, causing the gun to go off. However, there was no evidence in the police reports to support that assertion. The juvenile court also noted that AN's toxicology report showed the presence of illegal substances in her

12

system. The court did not find any evidence to show that this fact contributed to, induced, or facilitated the commission of the delinquent act.

The juvenile court evaluated whether the victim's family had been compensated for the damage in this case and noted that AN's family had received the proceeds from an insurance policy held by CPG's family. The court observed that no amount of money could compensate for the loss of the victim.

The juvenile court considered whether these circumstances were likely to recur and whether CPG would respond favorably to probationary treatment. The PDI included a Structured Assessment of Violence Risk in Youth ("SAVRY") report showing that CPG is a moderate risk for violent and nonviolent delinquent offenses. According to the Substance Abuse Subtle Screening Inventory ("SASSI") completed in this case, CPG has a high probability for a substance abuse disorder, which the court termed unusual for a youth his age. The juvenile court also expressed concern about the negative impact of the fact that CPG's mother smoked marijuana. The court expressed shock at a statement by CPG's mother and stepfather that they imposed no punishment on the juvenile in this matter because house arrest and taking away his phone left "nothing for them to do." The juvenile court noted that CPG and his brother were afforded free access to guns in the house. CPG had truancy issues and had been suspended for fighting in school.

The juvenile court stated that CPG had given investigators several versions of how the shooting occurred. Also, the court noted that the focus of the letter that CPG composed, which he read in court, was on his own loss and the need for forgiveness. He characterized this incident as an "accident"

13

and a "human mistake," but the juvenile court found otherwise. The court found that the commitment of CPG would not entail excessive hardship on the juvenile or his family.

The juvenile court noted that the OJJ recommended a disposition of three years in nonsecure custody. However, based upon the factors outlined above and the loss of life, the juvenile court found that the maximum disposition of five years in secure care was warranted. The court recommended a facility for placement and gave CPG credit for time served. CPG was given a copy of the law relating to the expungement process.

The record demonstrates that the juvenile court carefully considered all of the circumstances of this case along with the disposition guidelines of La. Ch. C. art. 901. The aggravating and mitigating factors were fully set forth in the record. The juvenile court fully articulated the factual basis for the imposition of the maximum disposition in this case. Although CPG did not have a prior criminal history, he admitted frequently smoking marijuana, lived in a house with an older brother who engaged in criminal activity, and CPG's mother used marijuana. CPG was given free access to guns in the house. He had numerous other pending criminal charges which were dismissed. The lack of parental supervision in the home was a factor in the commission of this delinquent act. The circumstances of the case, the needs of the child, and the best interest of society support the disposition imposed. The disposition is not a manifest abuse of the wide discretion afforded the juvenile court.

14

**ERROR PATENT**

In reviewing the record for error patent, we note that, at the time of disposition, the juvenile court failed to advise CPG of the time period within which to apply for post conviction relief.

The Louisiana Children's Code provides no procedures regarding post conviction relief. When the Children's Code is silent, the provisions of the Code of Criminal Procedure are applicable. *State in Interest of D.M.*, 51,920 (La. App. 2 Cir. 1/10/18), 247 So. 3d 133; *State in the Interest of W.A.P.*, 52,779 (La. App. 2 Cir. 5/22/19), 274 So. 3d 690. La. C. Cr. P. art. 930.8(C) states, in part, that, "At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief either verbally or in writing." Therefore, the juvenile court was required to inform CPG of the time limitation for seeking post conviction relief. If the trial court fails to advise, or provides an incomplete advisal, pursuant to La. C. Cr. P. art. 930.8, the appellate court may correct the error by informing the defendant of the applicable prescriptive period for post conviction relief. *State in Interest of D.M.*, *supra*.

By this opinion, we now advise CPG that no application for post conviction relief shall be considered if filed more than two years after the adjudication and disposition have become final under the provisions of La. C. Cr. P. arts. 914 and 922. *See State in Interest of D.M.*, *supra*; *State in the Interest of W.A.P.*, *supra*.

**CONCLUSION**

For the reasons stated above, the stay of the imposition upon CPG of secure care, previously entered in 52,476-JWC, is vacated. We affirm the

15

juvenile court adjudication of CPG for negligent homicide and his disposition of five years in secure care.

**STAY VACATED; AFFIRMED.**