MAX N. TOBIAS, JR., Judge.
hThe Louisiana Department of Public Safety and Corrections, Office of Juvenile *922 Justice (“OJJ”), appeals that part of the 11 December 2013 juvenile court judgment which orders it: (1) to notify the mother of a juvenile placed in its custody of all scheduled doctor appointments and to allow the mother to accompany the juvenile to each appointment, and (2) to ensure the presence of the dietician, nurse, doctor, and counselor at all doctors’ appointments. For the reasons that follow, we find the juvenile court exceeded its authority. Accordingly, we vacate that portion of the judgment appealed.
The facts of this matter are not in dispute. On 29 January 2013, the Orleans Parish Juvenile Court adjudicated C.M. delinquent for the offense of Aggravated Battery (five counts), violations of La. R.S. 14:34, and committed him to the custody of the OJJ until such time as he attained his twenty-first birthday. Currently, C.M. is seventeen years old and placed in secure custody.
On 26 August 2013, C.M. was diagnosed with Focal Segmental Glomerulosclerosis (“FSGS”),[1] a chronic kidney disease. A status hearing to 12review the medical treatment being received by C.M. was held on 4 December 2013. At that time, the juvenile’s treating nephrologist from LSU Children’s Hospital, Dr. Oluwatoyin Bam-bgbola, testified regarding the serious nature of C.M.’s kidney disease and how the continuity of his care impacts the successful treatment of his chronic condition. Speeifieally, Dr. Bambgbola stressed the importance of having someone accompany C.M. to his monthly nephrology appointments that has an understanding and is familiar with his medical condition and developed an emotional bond with C.M., who would be able to provide knowledgeable information regarding his medical history, diet, medication, and health status.[2] In his opinion, having C.M.’s mother accompany him to each appointment would be the best solution.[3] Dr. Bambgbola also emphasized the necessity of providing C.M. with ongoing support in order to assist him in accepting his long-term condition and complying with the recommended daily diet, exercise and medicine regimen required for optimal progress.
At the hearing, OJJ confirmed that the secure facility in which C.M. has been assigned provides personnel to daily check and record C.M.’s blood pressure, dispense his prescribed medication, and to monitor his overall medical condition. A dietician oversees his dietary needs and his food is separately prepared from scratch daily in order to meet his low-sodium, low-calorie requirements. Dr. Bambgbola confirmed that he consults regularly with C.M.’s treating physician at the facility regarding C.M.’s medical treatment.
| a At the close of the hearing, the juvenile court ordered OJJ to notify the mother of all scheduled appointments and to allow the mother to accompany the juvenile to *923 all of his doctor’s visits. The court also ordered OJJ to have the dietician, nurse, doctor, and counselor present at all doctor’s appointments. A judgment incorporating these requirements along with other decrees was signed on 11 December 2013.[4]
OJJ filed a motion and order for writ and request for stay, which was signed on 18 December 2013. No return date was given. A review hearing was scheduled for 22 January 2014 in the Orleans Parish Juvenile Court.
At issue is the extent of the juvenile court’s authority to order specific treatment or services for a juvenile placed in the custody of OJJ, following the juvenile’s adjudication of delinquency. Specifically, OJJ avers the court exceeded its statutory authority pursuant to La. R.S. 15:901 D and La. Ch.C. art. 908, when it ordered OJJ: (1) to notify C.M.’s mother of all scheduled appointments and to allow her to accompany him to his doctor visits, and (2) to have present at all of C.M.’s doctor’s appointments, the dietician, nurse, doctor, and counselor. We agree.
As a general matter, La. R.S. 15:901 D states that upon the child’s commitment, the Department of Corrections “shall determine the child’s placement, care and treatment, and the expenditures to be made therefore, through appropriate examinations, tests, or evaluations conducted under the supervision of the department.” Similarly, La. C.Ch. art. 908 A provides that the department |/‘shall have sole authority over the placement, care, treatment, or any other consideration deemed necessary from the resources that are available for children judicially committed to the department.” Pursuant to these provisions, when read together, the legislature has bestowed upon the Department of Corrections the plenary power to make decisions with respect to those juveniles committed to its custody, and a juvenile court, therefore, is without authority to “commit a juvenile to the custody of the Department and specify which services or treatment program the Department must provide.” State in the Interest of T.A., 00-2560, p. 4 (La.12/7/01), 801 So.2d 351, 353-54. In short, once the juvenile court assigns custody of the child to the department, the department has the plenary power to decide the appropriate care and treatment for the child and the expenditures to be made therefor after considering availability and costs. Id. While the juvenile court may compel the department to expend its resources for the care and treatment of a juvenile offender when it commits the offender to the custody of the department, it may not dictate which resources the department must employ for the juvenile’s benefit. La. Ch.C. art. 908(A); State in the Interest of T.A., p. 6, 801 So.2d at 354. See also, La. R.S. 36:408 H(1) and (2)(a)(d).[5]
*924 |sWe find the case of State in the Interest of V.N., 97-1190 (La.App. 5 Cir. 4/15/98), 712 So.2d 954, to be instructive. There, the juvenile court ordered that the juvenile placed in the state’s custody spend more educational time working towards his GED. On appeal, the court determined that this order violated the juvenile court’s authority and, accordingly, vacated the ruling. In doing so, the court noted the differing roles of the juvenile court (i.e., to oversee the general plan for the correction and rehabilitation of the juvenile), and the department (i.e., to provide the details for the implementation of that plan). While the juvenile court and the department have consistent and complimentary concerns, as stated in State in the Interest of V.N., the problem
lies in different views on how the limited resources available to help these children should be allocated. It is clear that the state only has limited resources to provide needed services to the juveniles in its custody. It is also clear that the legislature set up a system whereby the state, not the juvenile court, should be the ultimate authority on how these resources should be allocated.
Id., p. 10, 712 So.2d at 959. See also, State in Interest of J.S.A., 12-785, pp. 2-3 (La. App. 5 Cir. 5/23/13), 119 So.3d 710, 711-712 (juvenile court exceeded its authority by ordering OJJ to provide educational tutoring for juvenile who was adjudicated delinquent and committed to OJJ’s custody; sole authority to determine which services or treatment to provide to the juvenile lies with the state or responsible department).
Similarly, in State in the Interest of J.H., 97-1291, p. 3 (La.App. 4 Cir. 1/14/98), 706 So.2d 561, 563, this court held that once a court has awarded custody to the department, the juvenile court has no authority to order that services, such as transportation of family members, therapy, and parenting sessions, will be provided at the department’s expense.
| ,;In the instant case, the juvenile court exceeded its authority in ordering OJJ to notify the mother of every doctor appointment and to allow her to accompany C.M. to each doctor’s visit,[6] and to order OJJ to expend its resources to ensure the presence of the secure care facility’s dietician, nurse, doctor, and counselor at each of C.M.’s doctor’s appointments.[7] The legislature has given OJJ control over the funds it decides to make available for the services, care, and treatment of juveniles within its custody.[8] Thus, the court had *925 no authority to compel OJJ to use its funds in this manner if, in its discretion and considering the availability of funds and personnel, OJJ chooses not to do so. Accordingly, the portion of the 11 December 2013 judgment ordering OJJ to notify the mother of all doctor appointments and to allow her to accompany C.M. on each doctor visit, and to ensure the presence of the dietician, nurse, doctor, and counselor at each doctor appointment is hereby vacated.
JUDGMENT VACATED IN PART.

. FSGS is a rare disease that attacks the kidney's filtering system causing scar tissue to form in parts of the kidney and reducing kidney function. FSGS is known to cause nephrotic syndrome (a nonspecific kidney disorder) in children and adolescents, as well as kidney failure in adults. To date, the cause of FSGS is unknown.

. Thus far, according to Dr. Bambgbola, a different guard from the secure facility to which C.M. has been assigned has accompanied C.M. to each of his monthly appointments and these persons have not been able to provide any useful information regarding C.M.’s care, medical condition, or treatment.

.It is unclear to us how C.M.'s mother’s presence is essential and necessary in light of her restricted access to C.M. while in secure care. OJJ’s dietician, nurse, doctor, and counselor have daily access to C.M. and are in a better position to monitor C.M.'s condition and activities.

. The 11 December 2013 judgment also ordered OJJ to provide the juvenile court and Dr. Bambgbola with more detailed information regarding C.M.’s menu, in addition to providing them with a diary of C.M.’s daily blood pressure log, his daily dietary log, specifying the salt intake, every two weeks. OJJ has not appealed this portion of the judgment.

. Pursuant to La. R.S. 36:408 H(l), the OJJ "shall, in accordance with law, have responsibility for the care, custody, security, and treatment of children adjudicated delinquent and children of families adjudicated in need of services committed to the custody of or placed under the supervision of the office of juvenile justice or of youth services pursuant to the Children's Code except as otherwise provided by law.” La. R.S. 36:408 H(2) states, in pertinent part, that "the office shall provide:
(a) Evaluation and diagnostic services for children adjudicated delinquent....
(d) Treatment services in secure custody facilities for children adjudicated delinquent disposed to ... the office of juvenile justice and who, as determined by *924 the office of juvenile justice require this restrictive level of care and custody.

.At the hearing, OJJ argued that requiring it to provide notice to the mother of a juvenile in secure custody of all of his physician's appointments and allowing her to accompany him on each visit presents a safety issue to OJJ as it relates to the movement of the juvenile while in the Department’s custody. We agree. We acknowledge that we would employ a different analysis if the juvenile court order at issue pertained to a juvenile adjudicated a child in need of services under Title VI of the Children's Code rather than a juvenile adjudicated delinquent under Title VIII and placed in the custody of the OJJ.

. We also note that the juvenile court's order is largely impractical and overreaching, and could potentially be detrimental to C.M.'s health. Dr. Bambgbola testified as to the importance of C.M. being treated by him on a monthly basis. As time progresses and his condition deteriorates, he envisions that C.M. might have to be evaluated more frequently. It is conceivable that either the facility’s doctor, nurse, dietician, and/or counselor would be unavailable to .attend a scheduled monthly doctor appointment. If such were the case, since the order requires that all four be present at each appointment, C.M. runs the risk of a potential gap in his treatment.

. While the juvenile court may, and often does, make recommendations regarding the *925 services, care, and treatment for a juvenile committed to OJJ’s custody, it has no authority to order such services, care, or treatment.