# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## JWK 18-675


**STATE IN THE INTEREST OF**

**G. P.**



\*\*\*\*\*\*\*\*\*\*


APPLICATION FOR SUPERVISORY WRITS FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. JC-2018-0005
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy H. Ezell, and Candyce G. Perret, Judges.


**STAY DENIED; WRIT DENIED.**



**Jennifer Van Metre**
**Office of Juvenile Justice**
**7919 Independence Blvd.**
**Baton Rouge, LA 70896**
**(225) 922-3072**
**COUNSEL FOR STATE-APPLICANT:**
    **Office Of Juvenile Justice**

**PICKETT, Judge.**

The State of Louisiana, Department of Public Safety and Corrections, through the Office of Juvenile Justice (OJJ), has filed a writ application in this matter contesting the district court's order that the juvenile, G.P., be held in secure custody pending a review hearing scheduled for September 25, 2018. OJJ's writ application fails to discuss the procedural history in this matter.

District Court Judge Martha O'Neal filed a per curiam with this court. She noted that on January 26, 2018, G.P., who was thirteen years old at the time, entered an admission and was adjudicated delinquent of eleven felonies, which included four counts of simple burglary, violations of La.R.S. 14:62; four counts of simple criminal damage to property, violations of La.R.S. 14:56; and three counts of simple arson, violations of La.R.S. 14:52. G.P. was then placed in juvenile detention:

> [i]n an unsecured facility or in other placement with other family members until his 18th birthday subject to modification by the Court. The Court further explained to the juvenile that in the event he should decide to leave the unsecured facility, then he would be transferred to a secure facility.

The per curiam indicates a review hearing was held on April 3, 2018, and G.P. was ordered back into his mother's home after his failure to make good choices at Boy's Village. On May 7, 2018, OJJ requested the matter be reviewed because G.P.'s mother refused to comply with the conditions of G.P.'s probation. At a review hearing held on May 15, 2018, OJJ requested, and the court ordered, that G.P. wear an ankle bracelet until a review hearing fixed for October 16, 2018. On May 23, 2018, it was reported that G.P. removed the ankle bracelet, took his mother's car, and absconded. During a foot chase with police, G.P. broke into several homes and was eventually apprehended by DeRidder City Police. Thereafter, G.P.'s parents would not allow him to return home. G.P. returned to

court on May 25, 2018, for continued custody and probation revocation hearings. His probation was revoked, and he was ordered in unsecure placement. On June 12, 2018, a new petition for adjudication was filed in district court docket number JC-2018-28. The judge received notice via email from G.P.'s probation officer on July 6, 2018, that G.P. fled from a group home in Baton Rouge. On July 9, 2018, the judge received information that G.P. was apprehended and en route to Lake Charles for re-placement, and G.P. was charged with an offense in East Baton Rouge Parish. The judge received a report on August 1, 2018, that the East Baton Rouge Parish charge had been dismissed, but G.P. was scheduled for court in Calcasieu Parish on August 17, 2018. The judge was informed on August 14, 2018, that G.P. ran away from Harbour House on August 12, 2018, and had been apprehended. The judge noted G.P. had been off his medication from July 5 through August 14, 2018.[1] OJJ had made an appointment for G.P. on August 16, 2018, to get reauthorization and to refill his medication. On August 14, 2018, the judge ordered G.P. placed in secure custody. The judge provides the following reasons for her order:

1. Rebecca Harmon, his probation officer, informed the Court that he had a very important doctor's appointment that he had to be present for in 2 days to be able to get back on his medication;

2. The juvenile while in court discussed that he did not intend to comply with any facility that he could leave and threatened again to run away;

3. His mother stated that it takes approximately 30 days for the juvenile to be maintained on his medication for them to be effective and have the necessary overall effect desired.

The probation revocation review, as well as the adjudication hearing in an unrelated lower court docket number, is set for September 25, 2018.

---

[1]There was no indication what medication G.P. was required to take or for what condition the medication was prescribed.

OJJ filed a notice of intent to seek review of and request for a stay of the trial court's order of secure confinement on August 21, 2018. The trial court set a return date of September 13, 2018, and denied the request for stay. OJJ's writ was filed with this court on August 31, 2018. OJJ requests expedited consideration by this court or that a stay be issued. For the following reasons, we deny the stay, grant the request for expedited consideration, and deny OJJ's application for supervisory writs.

## ASSIGNMENT OF ERROR

OJJ contends the trial court erred in ordering it to place G.P in a specific type of placement thereby circumventing the agency's exclusive authority to determine the placement of a youth in its custody without regard for the agency's resources or appropriate examinations, tests, or evaluations that must be conducted prior to such a determination.

## DISCUSSION

OJJ relies on La.Ch.Code art. 908(A) and La.R.S. 15:901(D) to support its argument that it has sole authority over treatment, placement, and care of youth in its custody. OJJ argues that a court is prohibited from dictating the use of resources allocated to OJJ. Thus, any order that circumvents this authority should be rendered void.

Both La.Ch.Code art. 102, which sets forth the purpose and construction of the Children's Code, and La.Ch.Code art. 801, which addresses the purpose of the delinquency provisions, state that in those instances when a juvenile is removed from the control of his parents, "the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him."

Louisiana Children's Code Article 897 addresses disposition after adjudication of a felony-grade delinquent act and states, in part:

3

C. Except as provided for in Article 897.1, the court may commit the child to the custody of a private or public institution or agency. When commitment is to be made to a private institution or agency, the court shall:

(1) Select one that has been licensed under state law, if licensure is required by law for such an institution or agency.

(2) Whenever practicable, select an agency or institution of the same religious faith as the child or his parents.

D. Except as provided in Article 897.1, the court may commit the child to the custody of the Department of Public Safety and Corrections, with or without a recommendation that the child be placed in alternative care facilities through the department's client placement process, or be referred to appropriate placement resources in the state available through other public or private agencies.

Louisiana Children's Code Article 903, addressing judgments of disposition, states, in part:

C. The order of commitment may require the department to take physical custody of a child adjudicated a delinquent, committed to its custody pursuant to Article 897(D) . . . , and recommended by the court or the department for assignment to a secure program or facility, within fourteen days from the date of the court's signing of the judgment of disposition when the child is in or is going to be placed in the physical custody of a parish juvenile facility. If a court modifies a judgment of disposition, in accordance with Chapter 17, and gives the department custody of the adjudicated delinquent, the provisions of this Article and R.S. 15:901 apply.

Louisiana Children's Code Article 908(A) provides: "Notwithstanding any other provisions of law to the contrary, the Department of Public Safety and Corrections, office of juvenile justice, shall have sole authority over the placement, care, treatment, or any other considerations deemed necessary from the resources that are available for children judicially committed to the department."

Louisiana Revised Statutes 15:901, which addresses juvenile institutions, provides, in pertinent part:

C. The order of commitment may require the department to take physical custody of a child adjudicated a delinquent, committed to its custody pursuant to Article 897(D) . . . of the Children's Code, and recommended by the court or the department for assignment to a

secure program or facility, within fourteen days from the date of the court's signing of the judgment of disposition when the child is in or is going to be placed in the physical custody of a parish juvenile facility. If a court modifies a judgment of disposition, in accordance with Chapter 17 of Title VIII of the Children's Code, and gives the department custody of the adjudicated delinquent, the provisions of this Section and Article 903 of the Children's Code apply.

D. (1) Upon commitment to the Department of Public Safety and Corrections, the department shall have sole custody of the child and, except as provided for in Children's Code Article 897.1, shall determine the child's placement, care, and treatment, and the expenditures to be made therefor, through appropriate examinations, tests, or evaluations conducted under the supervision of the department. . . .

. . . .

G. (1) Community placement services shall have authority and responsibilities for children adjudicated delinquent or in need of supervision, including but not limited to the following:

(a) To assess or arrange for the assessment of the needs of each child.

(b) To provide or arrange for the provision of comprehensive diagnosis and evaluation services as the needs of each child warrant.

(c) To develop comprehensive service plans for each child.

(d) With respect to children committed to the custody of the Department of Public Safety and Corrections pursuant to the provisions of Articles 672, 792.53, 897, 899, and 1509 of the Children's Code, the secretary of the department shall develop rules and regulations to govern the assignment of such children to specific facilities and institutions operated by the department directly or through contractual arrangements.

(e) To place children in the setting most appropriate to their needs, including any nonresidential, community-based residential, and institutional programs operated by the Department of Public Safety and Corrections, as well as programs operated by other public or private agencies with which the department enters into contractual or purchase of services arrangements.

(f) To periodically monitor and review the progress of each child, and modify the child's service plan as warranted, through a multidisciplinary panel.

(2) The following rules shall be followed with regard to client placement functions:

(a) No program or unit shall be required to provide services to a client if the provision of such services would place the program in violation of any state or federal statute or court order.

(b) The secretary of the department may overrule a decision of the client placement unit upon appeal by any program or unit on grounds that such placement would be inconsistent with the child's needs. For all cases which are appealed to the secretary, a notation shall be made in the child's file indicating the grounds for such appeal, the decision made by the secretary, and the secretary's reasons for upholding or failing to uphold the original placement decision.

(c) No public or private agency operating under contractual or purchase of service arrangements with the department shall be required to provide services to a child if the provision of such services is contradictory to the terms of the contractual or purchase of service arrangement or is in conflict with the policies of the agency or the decisions of its governing authority.

Louisiana Revised Statutes 36:408 sets forth the purpose and functions of

the Department of Public Safety and Corrections (DPSC) as follows:

H. (1) The office of juvenile justice shall, in accordance with law, have responsibility for the care, custody, security, and treatment of children adjudicated delinquent and children of families adjudicated in need of services committed to the custody of or placed under the supervision of the office of juvenile justice or of youth services pursuant to the Children's Code except as otherwise provided by law.

(2) The office shall provide:

(a) Evaluation and diagnostic services for children adjudicated delinquent and children of families adjudicated in need of services.

(b) Community placement services for children adjudicated delinquent and children of families adjudicated in need of services and disposed to the custody of youth services or the office of juvenile justice.

(c) Alternative services in lieu of out-of-home placement for children adjudicated delinquent and children of families adjudicated in need of services and disposed to the custody or supervision of youth services or the office of juvenile justice and for their families.

(d) Treatment services in secure custody facilities for children adjudicated delinquent disposed to the custody of youth services or the office of juvenile justice and who, as determined by the office of juvenile justice require this restrictive level of care and custody.

In *State in Interest of T.A.*, 00-2560, p. 6 (La. 12/7/01), 801 So.2d 351, 354, the supreme court stated:

> The legislature thereby made clear that a court may compel the Department of Corrections to expend its resources for the care and treatment of a juvenile offender only when it commits the offender to the custody of the Department. Even then, the court may not designate which resources the Department must employ for the juvenile's benefit.

The supreme court went on to find the juvenile court could not mandate treatment by placement in a specific program, stating:

> Although the juvenile court has the authority to place respondent in a non-state facility for care and treatment as a condition of probation under La.Ch.C. art. 897(B)(2)(d), the court had no authority without the assent of the Department to place respondent in an Impact Program funded by the Department and at the Department's expense.

*Id.* at 355. We find *T.A.* is distinguishable from the case before us in that it involved the conditions of probation, rather than the conditions of custody.

In *State in Interest of S.T.*, 97-216 (La.App. 1 Cir. 9/19/97), 699 So.2d 1128, *writ denied*, 97-2627 (La. 2/13/98), 706 So.2d 992, the lower court ordered the juvenile be placed in a non-secure treatment facility to receive psychiatric treatment for sexual trauma and sexual compulsion. The court further ordered that he receive psychological counseling, social skills training, educational training, and vocational training. The court also recommended that he be placed in the Residential Treatment Facility, a group home associated with River Oaks Hospital. DPSC appealed, arguing the court had no authority to order placement in a particular facility or for a particular type of treatment. The first circuit addressed the issues, stating:

> If the court determines the child will be committed to the custody of the Department of Public Safety and Corrections, the Department has the authority to determine where the child should be placed and the type of treatment, and the court may not order the Department to provide a particular type of treatment or placement. *See State in*

*Interest of J.A.*, 532 So.2d 943 (La.App. 5 Cir.1988). *See also State in Interest of Sapia*, 397 So.2d 469 (La.1981); *State in Interest of J.M.*, 490 So.2d 444 (La.App. 5 Cir.1986).

> Accordingly, the portion of the disposition which ordered the Department to provide psychiatric treatment for sexual trauma and sexual compulsion is improper, and the judgment of disposition is set aside. The proceedings are remanded to the trial court for a disposition hearing in accordance with the views expressed herein.

*Id.* at 1129.

In *State in Interest of V.N.*, 97-1190 (La.App. 5 Cir. 4/15/98), 712 So.2d 954, the juvenile court ordered, at a review hearing, that the minor have more educational time and spend more time working on math. In its ruling, the fifth circuit stated:

> [T]he legislature set up a system of juvenile correction and rehabilitation in which, both courts exercising juvenile jurisdiction, and the state departments responsible for the custody of these juveniles, serve specific roles. Put succinctly, the role of the juvenile court judge is to oversee the general plan for the correction and rehabilitation of the child, while the role of the state is to provide the details for the implementation of that plan.

> We recognize that the concerns of both the state and the juvenile court, with respect to the efforts to rehabilitate the children of this state who are at risk, are consistent. The problems lies [sic] in different views on how the limited resources available to help these children should be allocated. It is clear that the state has only limited resources to provide needed services to the juveniles in its custody. It is also clear that the legislature set up a system whereby the state, not the juvenile court, should be the ultimate authority on how these resources should be allocated. However, the juvenile court retains jurisdiction to review the disposition and the power to change that disposition when warranted. It also retains jurisdiction to review grievances pursuant to C.Ch. art. 912. Further, under the provisions of R.S. 15:901 E, the juvenile court can make recommendations to the state. Under section F of that statute the court can insist that the state formulate an individualized plan for the child, and meet certain minimum requirements consistent with R.S. 15:901.

> However, the court cannot arbitrarily make the specific decisions on services needed by the child as it did in the instant matter. In the matter before this Court, the juvenile court rendered a disposition judgment committing the juvenile to the custody of the state. In a modification of that disposition, the court assessed and set specific educational goals for the child, and ordered the state to

provide the necessary services to achieve the goal. We find this to be a violation of the court's authority. Accordingly, the judgment of the juvenile court ordering the state to provide additional educational time every evening for V.N. is vacated.

*Id.* at 959. *See also State in Interest of C.M.*, 14-88 (La.App. 4 Cir. 5/28/14), 141 So.3d 921.

In *State in Interest of R.F.*, 97-1056 (La.App. 5 Cir. 3/16/99), 733 So.2d 84, the fifth circuit was called on to address a juvenile court's order for specific treatment and services for a child placed in the custody of DPSC following his adjudication of delinquency. In addressing the issue, the court stated:

While the Juvenile Court can not order specific placement or treatment, it certainly can recommend placement and treatment. In addition, the Juvenile Court can review the child's individual plan and determine whether the conditions of the disposition are being met by the plan. The Juvenile Court has the authority to rule that the plan is inadequate and may order the Department to review the plan and resubmit it to the court for additional review.

*Id.* at 85. The fifth circuit went on to find the juvenile court exceeded its authority to modify the general conditions of its disposition to the extent that it ordered specific training in the form of one extra hour of tutoring per day.

In *State in Interest of J.C.*, 09-2000, p. 2 (La.App. 1 Cir. 7/15/10) (unpublished opinion), the juvenile court committed J.C. to the custody of OJJ for six years, with a recommendation for secure custody. The court ordered the first three years to be served without the benefit of parole, probation, or suspension. The juvenile argued his disposition to secure care equated with punishment "rather than 'education, counseling and stability,'" and the court's restrictions against parole equated to "locking him up with no future opportunities." *Id.* at 2. In its opinion, the first circuit cited La.Ch.Code art. 903(C) and stated the lower court had the authority to recommend secure placement. However, in addressing the ability of the juvenile court to place restrictions on a child's parole eligibility, the

first circuit stated, "once a child has been committed to the custody of the Department, the Department has **sole** authority over the placement, care, treatment, or any other considerations deemed necessary." *Id.*

Based on *R.F.*, 733 So.2d 84, and *J.C.*, 09-2000, we find the district court had authority to recommend secure confinement for G.P. One could interpret the language in *S.T.*, 699 So.2d at 1129, "the court may not order the Department to provide a particular type of treatment or placement," as a prohibition on a court ordering placement in a particular type of facility. However, in *S.T.*, the first circuit did not expressly state when setting aside the disposition that it was doing so because the lower court ordered the juvenile placed in non-secure confinement. The issue of whether a court can order a specific type of placement was addressed by the fifth circuit in *State in Interest of J.M.*, 96-801 (La.App. 5 Cir. 1/15/97), 687 So.2d 136, *writ denied*, 97-734 (La. 11/21/97), 703 So.2d 1298.

In *J.M.*, 687 So.2d 136, the juvenile argued the court could not require DPSC to keep him in a secure setting since the department had the sole authority over placement, care, and treatment of those juveniles placed in its custody. In addressing the issue, the fifth circuit held:

> In the present case, the judge ordered that the juvenile be committed to the custody of the Department of Public Safety and Corrections, in a secure environment, until his twenty-first birthday. However, once he committed the juvenile, he did not dictate the actual placement, other than it being a secure environment of the juvenile, nor did he dictate the care or treatment the child was to receive in the department's custody. We find, from the above cited articles, that the court *can recommend placement* in a *secure setting*. See also La. R.S. 15:901.

> We also note that a modification of disposition *can* be filed at any time, if it becomes apparent that the child no longer needs a secure environment. La. Ch.C. art. 909 through 911. See also La. R.S. 15:906 A(1) which allows the Department of Public Safety and Corrections to recommend to the committing court the release of the juvenile committed to its care, who, in the opinion of the department, is ready to be returned to his own home, or to a substitute home.

10

Based on the foregoing discussion, and particularly in light of the fact that a modification of disposition can be filed, we find no error in the trial court's disposition imposing a minimum sentence and further mandating that the juvenile be placed in a secure setting. This assignment of error is without merit.

*Id.* at 139. The fifth circuit cited La.Ch.Code art. 897(D) and La.Ch.Code art. 903(C) in support of its ruling. We agree with the reasoning of the fifth circuit in *J.M.*

Based on the foregoing, we find the district court's order mandating G.P. be held in secure confinement is not error. Accordingly, OJJ's writ application is denied.

**STAY DENIED; WRIT DENIED.**