CALLOWAY, J., Ad Hoc
_JjThe juvenile, D.R., Jr. (“D.R.”) was adjudicated delinquent for the offense of aggravated rape, in violation of La. R.S. 14:42. The disposition ordered him to be committed to the Office of Juvenile Justice (“OJJ”) until the age of 21.[1] D.R'. appeals. For the reasons set forth in this opinion, we affirm D.R.’s adjudication and disposition as amended, and remand the matter for technical compliance with La. Ch. C. art. 903. ' We do not address D.R.’s argument regarding ineffective assistance of counsel.
FACTS
One summer evening in 2014, 11-year-old T.P., her nine-year-old sister, A.M., and their 12-year-old brother, F.P., were at their great-grandmother’s house while their aunt and legal guardian, Ac.M., was at work. Their cousin, D.R., was . also present at the great-grandmother’s house that evening. The four children were watching television alone in the living room when D.R. asked F.P. if he wanted to have sex with the girls. D.R. told the girls to pull down their pants and underwear, which they did. D.R. instructed T.P. to bend over the couch, and he had anal intercourse with her.
On May 1, 2015, a petition was filed charging the juvenile, D.R., age 14, with the aggravated rape of the victim, T.P., age 11, on or about July 1, 2014, in violation of La. R.S. 14:42. D.R. entered a denial and he was subsequently released to his mother on house arrest pending further proceedings. On June 9, 2015, an amended petition was filed clarifying-that the offense was committed from May 28, 2014, to July 1, 2014.
jaThe following evidence was adduced at the adjudication hearing, which took place ■ on September 9,2015.
Meehill Davis, a mental health professional, testified that she became aware of the incident during her April 26, 2015, counseling session with T.P. and A.M. at Stoner Hill Elementary School. Davis alerted law enforcement, the Department *1119 of Children and Family Services, and Ac.M.
Ac.M. testified that she asked T.P. and A.M. about the incident the night it occurred. She further testified that she believed the incident occurred between May 28, 2014, and July 1, 2014, because she was working during that time. The following testimony was allowed over the hearsay objection of defense counsel:
My child informed me that when they was at their grandmother house, [D.R.] touched her on her booty’ So I asked [A.M.]. A.M. told me, yes. So I took both of my girls into my room. I laid them down on the bed to check them. When I checked [T.P.] back, I didn’t notice no blood, because at the time when they informed me, my child had already took a bath and throwed her clothes away.
After Davis advised Ac.M. of the incident on April 26, 2015, Ac.M. alerted the police. Ac.M. testified that a detective spoke with A.M. and T.P., and that she took the girls to the Gingerbread House for 'interviews.
Shreveport Police Officer Billy Ray Johnson testified that he responded to Davis’s call from the school. Upon arriving, he learned of the seriousness of the complaint, and contacted Detective Mike Jones of the Shreveport Police Department to investigate.
Jones testified that he went to the school and spoke with T.P., A.M., and Ac. M., and scheduled their interviews at the Gingerbread House for |Jater that afternoon. Jones also testified that he questioned D.R., who made a statement.
The video recordings of the Gingerbread House interviews were introduced into evidence and played during the hearing. T.P. was interviewed first and related to the interviewer that the four children were sitting on the couches in her great-grandmother’s living room, watching television when D.R. told her to pull her pants down. She stated that he told her to bend over the couch and he put “his stuff’ in “her butt.” She circled the genital area on a male drawing depicting “his stúff,” and circled the buttocks of the female drawing indicating “her butt.” A.M. corroborated T.P.’s statements in her interview. She told the interviewer that T.P. was face down and D.R. was on top of her sister, moving his whole body. Both girls told the interviewer that the great-grandmother walked in and “whupped” them and F.P. and had a talk with D.R.
F.P., who was 13 years old at the time of trial, testified that he, along with T.P., A.M., and D.R., were in the living room at their great-grandmother’s house watching television. Their great-grandmother was in her room, lying down. D.R. asked F.P. if he wanted to have sex with F.P.’s sister. F.P. testified that D.R. “stuck his private part in T.P. five times.” He further testified that his great-grandmother walked in the living room while D.R. was pulling up his pants, and that she “whupped” him, T.P., and A.M. and “had a talk with D.R,”
Alice Monroe, who testified that she is the children’s great-grandmother, denied having any knowledge of the alleged incident. Monroe | ¿stated that she initially became aware of it when D.R.’s school contacted her about the allegations.
Upon the conclusion of the adjudication hearing, D.R. was adjudicated a delinquent on the offense of aggravated rape. The trial judge found Monroe’s testimony unreliable, stating that she seemed forgetful and confused. Further, he found Ae.M. and the children credible and their- statements and testimonies reliable. D.R. was committed to the OJJ until his 21st birthday. This appeal by D.R. followed.
*1120 LAW AND DISCUSSION

Sufficiency of the Evidence

In D.R.’s first assignment of error, he argues that the evidence introduced at the adjudication hearing was insufficient to prove all the elements of the offense of aggravated rape beyond a reasonable doubt under the standard of review applicable in delinquency proceedings.
In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch. C. art. 883. In a juvenile case, the reviewing court is constitutionally compelled to review both facts and law. La. Const. Art. 5, § 10(A) and (B). However, the reviewing court must recognize that the juvenile judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence. State ex rel. K.M.T., 44,731 (La.App.2d Cir.8/19/09), 18 So.3d 183, citing State ex rel. E.D.C., 39,892 (La.App.2d Cir.5/11/05), 903 So.2d 571, writ denied, 2005-1568 (La.1/27/06), 922 So.2d 544. Therefore, this Court |figrants great deference to the juvenile court’s factual findings and credibility determinations and assessment of the weight of particular testimony. Id. Not only does the standard of review in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), apply to juvenile delinquency adjudicatory hearings, but our state constitution mandates that we determine, after reviewing the record evidence, whether the juvenile court was clearly wrong in its fact findings. Id.
The standard of appellate review for a sufficiency of the evidence claim under Jackson v. Virginia, supra, is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. See also State v. Carter, 42,894 (La.App.2d Cir.1/09/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913.
I Where procedures are not provided in the Children’s Code, or otherwise by law, the court shall proceed in accordance with the Code of Criminal Procedure in a delinquency proceeding. La. Ch. C. arts. 104(1) and 803.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.02/13/08), 975 So.2d 753. This is equally applicable to the testimony of victims of sexual assault. State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207. Such testimony alone is sufficient even where the state does not introduce medical, scientific, *1121 or physical evidence to prove the commission of the offense by the defendant. Id.
La. R.S. 14:42 provides as follows:
A. First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
[[Image here]]
(4) When the victim is' under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
[[Image here]]
E. For all purposes, “aggravated rape” and “first degree rape” mean the offense defined by the provisions of this Section and any reference to the crime of aggravated rape is the same as a preference to the crime of first degree rape. Any act in violation of the provisions of this Section committed on or after August 1, 2015, shall be referred to as “first degree rape.”
Aggravated rape, now first degree rape, is a general intent crime. State v. Wallace, 41,720 (La.App.2d Cir.1/24/07), 949 So.2d 556.
After a careful review of the record, we find that the evidence presented was sufficient to support the delinquency adjudication of D.R. for aggravated rape. It is not disputed that T.P. was under the age of 13 at the time of the incident. As mentioned above, T.P. told the interviewer at the Gingerbread House that D.R. told her to pull her pants down and that he put his “stuff in her butt.” Further, she circled the genital area on a male drawing depicting “his stuff,” and circled the buttocks on a female drawing indicating “her butt.” A.M. corroborated T.P.’s statements in her interview by telling the interviewer that T.P. was face.down and D.R. was on top of her sister, moving his whole body. F.P. also testified that D.R. “stuck his private part in [T.P.] five times, and once more after T.P. insisted he stop.”
The trial judge did not err in weighing the evidence and expressly finding that the testimonies of T.P., A.M., and F.P. were consistent regarding D.R.’s actions, and that Ac.M.’s testimony supported the scenario as the children described it. In addition, Ac.M. testified that the incident must have occurred during the time frame of May 28 — July 1, 2014, and each of the three children stated that it was in the summer..
The evidence presented meets the Jackson v. Virginia standard. Accordingly, we conclude that this assignment of error is without merit:
| ¡Ineffective Assistance of Counsel
In his second assignment, D.R. argues that his trial counsel offered assistance below that guaranteed by the Sixth Amendment. Specifically, he argues that his trial counsel failed to object to the trial court permitting the prosecution to proffer the general contents of a statement alleged to have been. made by D.R., after the judge ruled the statement inadmissible. Further, ,D.R. argues that his trial counsel failed to object to the state’s failure to call T,P. or A.M. as a witness at the adjudication hearing, which deprived him of his right to confront his accusers in, violation of the Confrontation Clause, a right which had been preserved in the stipulation admitting the videotaped. statements of the two juveniles.
As a general rule, a claim of ineffective assistance of counsel .is more properly raised in an application for post-conviction relief in the district court rather than by appeal. This rule has been applied in ju *1122 venile matters as well. State ex rel. K.G., 34,535 (La.App.2d Cir.1/24/01), 778 So.2d 716. This is because post-conviction relief creates the opportunity for a full evidentia-ry hearing pursuant to La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State ex rel. K.G., supra. However, if the record fully discloses the evidence necessary to decide the issue, it may be considered on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State ex rel. K.G. supra.
In this case, the record does not fully disclose the evidence , necessary to decide the issue. Defense counsel agreed to the admissibility of the two LGingerbread House videotapes “subject to cross and redirect,” but then lodged no objection , when the prosecution failed to call either the victim or the other witnesses interviewed at Gingerbread House to testify at trial. Had objections been urged, this 'failure presumably would have constituted reversible error under State v. Carper, 45,178 (La.App.2d Cir.6/9/10), 41 So.3d 605, writ denied, 2010-1507 (La.9/3/10), 44 So.3d 708. This issue, and any other arguments regarding ineffective assistance of counsel, should be decided after an evidentiary hearing in which trial counsel can address the arguments. Therefore, we 'do not address this assignment of error in this opinion.

Testimony of AcM.

D.R. argues that the trial court erred in permitting the hearsay testimony of Ae.M., regarding what T.P. and A.M. told her about the incident. He argues that La. C.E. art. 801(D) does not allow admissibility of the'hearsay because neither T.P. or A.M. testified at trial and there is no indication they were available for cross-examination. Further, he argues that the exception of La. C.E. art. 804(B)(5) does not apply because it was not shown that the girls were unavailable. Finally, D.R. argues that this error was not harmless because the date range of the alleged offense, which was established through Ac. M.’s testimony, was critical in determining the length of detention for D.R. because if the offense occurred before D.R. was 14 years of age, he was only exposed to detention until his 18th birthday.
La. C.E. art. 801 provides in pertinent part:
D. . Statements which are not hearsay. A statement is not hearsay if:
|1(1(1) Prior statement by • witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
[[Image here]]
(d) Consistent with the declarant’s testimony and is one of initial complaint of sexually assaultive behavior.
La. C.E. art. 804, Hearsay exceptions; declarant unavailable, provides in pertinent part:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
⅜ ⅜ ⅜
(5) Complaint of sexually assaultive behavior. A. statement made by a person under the age of twelve years and the statement is one of initial or otherwise trustworthy complaint of sexually assaultive behavior.
The erroneous admission of hearsay evidence does not require reversal of the conviction when the error is harmless beyond a reasonable doubt. State v. Lewis, 47,853 (La.App.2d Cir.2/27/13), 110 So.3d 644, writ denied, 2013-0672 (La.10/25/13), 124 So.3d 1092. Rather, re *1123 versal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the ver-diet. Id. The Louisiana Supreme Court has long held that the, admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Johnson, 389 So.2d 1302 (La.1980); State v. McIntyre, 381 So.2d 408, 411 (La.1980), cert. denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).
The testimony of Ac.M. regarding what T.P. and A.M. told her on the evening that the incident occurred is inadmissible hearsay. However, its Inadmission-in the instant case was harmless error. La. C.'E. art. 801(D)(1) clearly defines prior statements, including a complaint,of sexual assault provided in subsection (D)(1)(d), as not hearsay if the declarant testifies and is subject to cross-examination. Likewise, La. C.E. art. 804(B)(5), on which the trial judge relied, does not provide an exception to the hearsay rule in this case because it was not established that T.P. and A.M. were unavailable declarants. The state concedes this point in its brief on appeal. Nevertheless, we find that the error is harmless.
T.P. told Ac.M. that D.R. had touched her “booty.” This testimony is cumulative and corroborative of all the other evidence presented concerning D.R.’s inappropriate sexual. contact with T.P. Additionally, there is no reasonable possibility that this error contributed to the adjudication of delinquency. State v. Lewis, supra. Regarding the argument that it was Ae.M.’stestimony that established the date range of the offense, we note that both girls told Davis ’ that the incident occurred in the summer of 2014. D.R.’s birthday, which is August 8, 1999, indicated that-he would have turned 15 on August 8, 2014. If the- incident occurred at- any point during the summer of 2014, as the girls reported- to Davis, D.R. would have been exposed to confinement until his 21st birthday for the offense. .Accordingly, any error in admitting the testimony of Ae.M. -regarding the date range was also harmless,
. . >■ , „ ... Thls of error 18 mer’ .
112 Written Judgment of Disposition
D.R. contends that the record does not contain' a written judgment of disposition pursuant to La. Ch. C. art.- 903. In response,, the state agrees that this-matter should be remanded to the juvenile court for the issuance of a written, signed judgment conforming to Ch. C. art. 903.
La. Ch. C. art, 903 provides in pertinent part:
B. The court shall enter into the record a written judgment of disposition specifying all of the following:
(1) The offense for which the child has been adjudicated a delinquent.
(2) The nature of the disposition.
(3) The agency, institution, or person to whom the child is assigned.
(4) The conditions of probation, if applicable.
(5) Any other applicable terms and conditions regarding the disposition.
(6) The maximum duration of the disposition and, if committed to the custody of the Department of Public Safety and Corrections, the maximum term of the commitment.
[[Image here]]
D. - An extract of the minutes of court specifying the information required by Paragraph B of this Article and signed by the court shall be considered a written judgment of-disposition.
*1124 In this case, the record contains only a minute entry, signed by the deputy clerk of court. The minute entry document does not contain the information required by La. Ch. C. art. 903(B). In State ex rel. S.C.J., 2009-1272 (La.App. 3d Cir.2/3/10), 28 So.3d 1206, the court found that the lack of a signed judgment required remand of the matter for the entering into the record of a signed judgment in compliance with La. Ch. C. art. 903(B). Following State ex rel. S.C.J., supra, we remand this matter and order the juvenile court judge to enter into the record a written, signed judgment of the disposition pursuant to La. Ch. C. art. 903.

Credit for Time Served

In his final assignment of error, D.R. argues that the trial court erred in failing to give him credit for the time he served in detention prior to the imposition of the disposition in the present case. In response, the state agrees that this matter should be remanded to amend the disposition to reflect that the juvenile is given credit for time served.
La. Ch. C. art. 898 provides that “[t]he court shall give a child credit for time spent in secure detention prior to the imposition of disposition.” In this case, the record reflects that the disposition did not include credit for prior time spent in secure detention.
Although D.R. was sentenced to a “juvenile life” sentence and credit for time served may not decrease the term of custody, we find that the disposition must be amended to reflect that the juvenile is given credit, if any is available to him, for time spent in secure detention prior to disposition. We remand this matter and order juvenile court judge to note the amendment in the custody order, minute entry, and written judgment.
CONCLUSION
For the foregoing reasons, the adjudication of D.R. as delinquent on the charge of aggravated rape is affirmed. We amend the disposition to reflect credit for time served in secure detention prior to disposition, and | uafSrm the disposition as amended. Additionally, we remand the matter to the juvenile court with instructions to enter into the record a written, signed judgment of the disposition pursuant to La. Ch. C. art. 903, and that the amendment to the disposition be noted in the custody order, minute entry, and written judgment of the juvenile court. We do not address D.R.’s argument regarding ineffective assistance of counsel.
ADJUDICATION AFFIRMED; DISPOSITION AFFIRMED AS AMENDED; MATTER REMANDED WITH INSTRUCTIONS.

. The ■ commitment ran concurrent with a similar but unrelated offense for which the defendant was committed to the OJJ until his 18th birthday. '