Judgment rendered July16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,325-JAK

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA
IN THE INTEREST OF
L.C., DOB: 12/12/2008

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Franklin, Louisiana
Trial Court No. 2024J2334

Honorable John Clay Hamilton, Judge

* * * * *

LOUISIANA APPELLATE PROJECT      Counsel for Appellant,
By: Annette Fuller Roach      L.C.

PENNY WISE DOUCIERE      Counsel for Appellee,
District Attorney      State of Louisiana

AMANDA MICHELE WILKINS
SHIRLEY GUILLORY GEE
Assistant District Attorneys

* * * * *

Before THOMPSON, MARCOTTE, and ELLENDER, JJ.

**MARCOTTE, J.**

This is a juvenile delinquency appeal.  It arises from the Fifth Judicial District Court, Parish of Franklin, the Honorable John Clay Hamilton presiding.  The juvenile, L.C., was adjudicated delinquent for one count of aggravated assault with a firearm, in violation of La. R.S. 14:37.4.  L.C. was ordered to serve three years in a secure care program.  L.C. now appeals, arguing that there was insufficient evidence to adjudicate him delinquent and that his disposition was harsh and excessive.  For the following reasons, we affirm.

## FACTS

On April 22, 2024, the state filed a juvenile delinquency petition in Franklin Parish, Louisiana, alleging that L.C. committed aggravated assault with a firearm on April 17, 2024.  The court minutes indicate that L.C. entered a general denial to the charge on April 25, 2024, and June 27, 2024.  The adjudication hearing was held on September 26, 2024, at which the following evidence was adduced.

The victim, Marquise Heckard, took the stand and described the events that transpired on April 17, 2024.  He stated that he had never met L.C. prior to the incident but that on that date, the two were "exchanging words" in the street outside of his cousin's house and near L.C.'s house in Winnsboro, Louisiana.  Mr. Heckard surmised that L.C. did not like him because he was from a different town.

When the verbal sparring between the two became more heated, L.C. said he was going to "get [his] momma" and proceeded back to his house.  However, rather than returning with his mother, Mr. Heckard said that L.C. came back with a gun in his waistband.  Mr. Heckard testified that L.C. ran

halfway down the street toward him with the gun handle sticking out of his pants.

Since L.C. was chasing him with a gun and there were other children outside, Mr. Heckard said he decided to run inside his cousin's house. Mr. Heckard positively identified L.C. in the courtroom as the person who chased him with the gun. Mr. Heckard testified that he could see the gun sticking out two inches from the waist of L.C.'s pants. Mr. Heckard also said that he knew the gun was real because at one point the gun fell out of L.C.'s pants and made a distinct noise of metal hitting pavement.

Mr. Heckard stated that he was about 25 feet away from L.C. when he saw the gun sticking out of his waistband. Mr. Heckard's back was turned toward L.C. as he was running away from him, but he heard the gun fall and hit the ground. Mr. Heckard stated that he was afraid for his life when he ran into the house with L.C. chasing him.

Shaquana Whitley, Mr. Heckard's cousin who lived across the street and several houses down from L.C., testified regarding the assault. Ms. Whitley testified that she saw L.C. chase Mr. Heckard into her house and that L.C. was trying to shoot him. She called in the complaint to the Winnsboro Police Department.

Ms. Whitley described the incident as follows:

A: They was about to fight and he (L.C.) – he walked towards the house and he was like – he was like 'I'm fixing to go and get my mamma' so he went back in the house and when he came back outside that's when he went to hollering 'I'm fixing to shoot you! I'm fixing to shoot you!' so he ran from his house and he ran in my yard up under – like halfway up under my car porch trying to catch Mr. Heckard.

Q: And so when he said he was going to shoot you, did you physically see a gun?

2

A:    Yes, ma'am.

Q:    Okay.  Where was the gun on him?

A:    It was in his pants.  And when he was leaving out the yard he dropped the gun in the middle of the road.  In fact it slid out his pants.

Q:    Oh, it fell into the road?

A:    Uh huh (yes).

Q:    Did you see the gun when it fell into the road?

A:    Yes, ma'am.

Ms. Whitley stated that she was about twenty feet from L.C. when she saw the gun fall out of his pants.  Ms. Whitley also testified regarding two subsequent incidents concerning L.C. and threats that he made toward her.  First, he told her daughter that he had "something serious" for her and would shoot up her house and then, on Easter Sunday, she saw L.C. standing with his friends and they all had on ski masks and pulled out guns and pointed them at her car.  She reported this incident to the Franklin Parish Sheriff's Office ("FPSO").  Ms. Whitley was asked about L.C.'s claim that the weapon was actually a fake, plastic gun, and she assured the court that the gun she saw drop out of L.C.'s pants was a real gun and that she could tell by the sound it made when it hit the road.

FPSO Deputy Damon Emfinger ("Dep. Emfinger") was called as a witness for the limited purpose of corroborating Ms. Whitley's testimony regarding the complaint she filed against L.C. for pointing a gun at her vehicle.  Dep. Emfinger was not involved in the investigation of the incident involving L.C. and Mr. Heckard.  However, he confirmed to the court that

Ms. Whitley had lodged a complaint regarding L.C. and several other subjects possibly pointing a gun at her as she drove by in her car.

Jonathan Washington, L.C.'s stepfather, was called as a defense witness. Mr. Washington said that he was in his house when the incident occurred and by the time he left the house he did not see Mr. Heckard at all, but did see people in the street arguing. Mr. Washington also stated that he never saw L.C. go into Ms. Whitley's yard.

At the conclusion of the hearing, the trial court rendered its judgment, adjudicating L.C. delinquent for aggravated assault with a firearm. The trial court found Mr. Heckard to be a credible witness, and described its findings regarding Mr. Heckard as follows:

> I perceived him to be very truthful about his statements. I do believe that there was an altercation between he and the defendant. He also heard the defendant indicate he was going to get his mother and I believe him when he said that he saw clearly a gun sticking out of the defendant's waist band about two inches, and only after that did he turn and run into the house. I do believe he also heard the gun fall from the waistband onto the road. And both he and Ms. Whitley indicated that it made a significant noise when it did. So I put a lot of credibility in Mr. Heckard's testimony.

The trial court was less convinced of Ms. Whitley's believability, finding "her credibility to be somewhat lacking in that I think she wanted to embellish to some extent the things that she saw." However, the trial court did note its belief in the portion of her testimony where she described seeing and hearing a gun drop from L.C.'s waistband.

After reviewing and weighing all of the testimony, the trial court gave reasons for its ruling:

> So based . . . primarily on the testimony of Mr. Heckard, I do find that the defendant in this case committed an assault with a firearm, I do find that Mr. Heckard was in significant fear of his safety based primarily on two things, No. 1, the altercation –

4

verbal altercation that occurred between he and the defendant and No. 2, the fact that he saw a firearm sticking out of the defendant's waistband. So I'm going to adjudicate the defendant in this case as a delinquent with regard to the charge of aggravated assault with a firearm.

The trial court then ordered L.C. to serve three years in the custody of the office of juvenile justice. L.C. filed a motion for a new trial on October 2, 2024, which was denied by the trial court on October 10, 2024.

This timely juvenile delinquency appeal followed.

**DISCUSSION**

*Sufficiency of the Evidence*

For his first assignment of error, L.C. argues that the evidence admitted at trial was insufficient to prove beyond a reasonable doubt that he committed the offense of aggravated assault with a firearm. L.C. claims that although Mr. Heckard testified that he feared for his life because he saw a weapon, he never testified that L.C. pulled the weapon from his pants or made any gestures "which would have incited a belief of his intent to use the weapon." L.C. asserts that in his review of "numerous cases" involving convictions of aggravated assault, "the majority of the defendants pulled the weapons and pointed it at their victim." And in the few cases where the weapon was not pulled, "the defendants made it clear that they were armed and made threats either by directly stating their intent to use the firearm against the victim or by actions such as gesturing or other visual communication of their intent to do so."

L.C. argues that the facts of his case are distinct because he never pulled his weapon from his waistband nor did he point it at anyone. Instead, he "merely had it on his person where it was visible to others." L.C. also claims that the state never proved the gun was real rather than a toy.

5

L.C. asserts that the state failed to prove beyond a reasonable doubt the intent-to-scare mental element and conduct by him of the sort to arouse a reasonable apprehension of bodily harm. L.C. submits that "some sort of overt act directly involving the weapon was necessary to incite a reasonable apprehension of bodily harm."

The state argues that the evidence at trial was more than sufficient to prove beyond a reasonable doubt that L.C. committed aggravated assault with a firearm. The state points to the testimony of Mr. Heckard and Ms. Whitley, who were both in accord that L.C. came out of his house with a gun sticking out of his pants yelling, "I am fixing to shoot you!" in the direction of Mr. Heckard. While the state contends that it proved the weapon on L.C.'s person was in fact an actual gun, based on the testimony regarding the noise it made when it fell out of L.C.'s pants, it also contends that it did not have to prove that it was real. Instead, what matters for purposes of the elements of the offense is that the weapon was used by the juvenile to excite fear and apprehension in the victim, which in this case it did according to the testimony at trial.

The state argues that it established the intent-to-scare element with the testimony from Ms. Whitley that she heard L.C. scream "I'm fixing to shoot you!" as he was running down the street toward Mr. Heckard with a gun poking out of his waistband. The state also disputes L.C.'s contention that "some sort of overt act directly involving the weapon" was necessary to incite a reasonable apprehension of bodily harm. The state contends that this claim is not supported by the jurisprudence and is adding an additional element to the crime and burden upon the state which does not exist.

The standard of appellate review for a sufficiency of the evidence claim under *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *See also State v. Carter*, 42,894 (La. App. 2 Cir. 1/9/08), 974 So. 2d 181, *writ denied*, 08-0499 (La. 11/14/08), 996 So. 2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Speed*, 43,786 (La. App. 2 Cir. 1/14/09), 2 So. 3d 582, *writ denied*, 09-0372 (La. 11/6/09), 21 So. 3d 299. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Gullette*, 43,032 (La. App. 2 Cir. 2/13/08), 975 So. 2d 753. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Not only does the standard of review in *Jackson, supra*, apply to juvenile delinquency adjudicatory hearings, but our state constitution mandates that we determine, after reviewing the record evidence, whether the juvenile court was clearly wrong in its fact findings. *Id*.

7

In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch. C. art. 883. In a juvenile case, the reviewing court is constitutionally compelled to review both facts and law. La. Const. art. V, § 10(A) and (B). However, the reviewing court must recognize that the juvenile judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence. *State In Interest of D.R.*, 50,594 (La. App. 2 Cir. 2/24/16), 188 So. 3d 1116. Therefore, this court grants great deference to the juvenile court's factual findings and credibility determinations and assessment of the weight of particular testimony. *Id*.

To convict a defendant of aggravated assault with a firearm, the state must prove the defendant tried to commit a battery, or intentionally placed the victim in reasonable apprehension of receiving a battery by the discharge of a firearm. *State v. McCoy*, 45,090 (La. App. 2 Cir. 4/14/10), 34 So. 3d 1145. A discharge of the firearm is not an element of the offense. *State v. Sheperd*, 56,075 (La. App. 2 Cir. 2/26/05), 2025 WL 615113. (*See also* La. R.S. 14:37.4, which the Louisiana Legislature amended in 2012 to exclude the phrase "by the discharge of" and added the word "with," thereby eliminating the element of "discharge" of a firearm. 2012 La. Acts No. 320, § 1.)

In order to support a conviction for assault, the state must prove beyond a reasonable doubt: (1) the intent-to-scare mental element (general intent); (2) conduct by defendant of the sort to arouse a reasonable apprehension of bodily harm; and (3) the resulting apprehension on the part

of the victim. *State v. De Gruy*, 16-0891 (La. App. 4 Cir. 4/5/17), 215 So. 3d 723.

Here, the facts at trial showed that L.C., after arguing with Mr. Heckard and under the guise of summoning his mother, went back to his house and armed himself with a gun. L.C. then exited his house with the gun protruding from his waistband and proceeded to run down the street toward Mr. Heckard screaming that he was "fixing to shoot" Mr. Heckard.

Mr. Heckard, understandably scared by these events, retreated to the safety of Ms. Whitley's home. At trial, Mr. Heckard affirmed that he was in fear for his life. He also testified that he was about 25 feet away from L.C. when saw the gun. In our view, this distance is close enough where Mr. Heckard could see the gun and be in fear for his life.

L.C.'s claim that the gun in his waistband was actually a toy gun is belied by the testimony from Mr. Heckard and Ms. Whitley that when the gun fell out of his waistband, they both heard the distinct sound of gunmetal hitting pavement. Moreover, whether the gun was real or fake is not determinative. So long as the weapon was used in such a way to excite fear and apprehension in Mr. Heckard, it is considered a dangerous weapon under the law. *See State in Int. of C.B.*, 52,245 (La. App. 2 Cir. 6/27/18), 251 So. 3d 562.

L.C. urges that "some sort of overt act directly involving a weapon was necessary to incite a reasonable apprehension of bodily harm." We find no statutory or jurisprudential support for this position. What matters is the effect the use of the weapon has on the victim. In this case, Mr. Heckard had just been involved in a verbal altercation with L.C., who then returned to the scene with a gun sticking out of his pants threatening to shoot Mr.

9

Heckard.  We find that this was sufficient to place Mr. Heckard in reasonable apprehension of bodily harm, which is all that is required under the statute.  Accordingly, there was a reasonable basis for the trial court's finding L.C. delinquent for one count of aggravated assault.  This assignment of error is without merit.

*Excessive Disposition*

In his second assignment of error, L.C. argues that the disposition of three years in secure care amounts to cruel and unusual punishment and that it fails to assure the requisite rehabilitative features necessary for fulfillment of the legislative mandates in juvenile delinquency proceedings.  L.C. notes that he was 15 at the time of this offense, thus, once he is released, he will no longer be subject to the juvenile courts so no other opportunities for rehabilitation will exist.

Before ordering secure care for three years during a critical stage of his development, L.C. asserts that the trial court should have explored what rehabilitative services could have been provided in the community or lesser restrictive settings.  L.C. states that the office of juvenile justice facilities will not provide him with the rehabilitative services he needs.  L.C. claims that a lesser disposition with appropriate rehabilitative services will better serve both the juvenile and the community.

The state argues that the three-year disposition imposed on L.C. was not excessive.  The state notes that aggravated assault with a firearm carries a maximum sentence of ten years with or without hard labor, maximum ten thousand dollar fine, or both.  Thus, the state argues the three-year sentence fell well within the applicable sentencing range of zero to ten years.

The state further notes that the trial court's order provided for nonsecure custody and allowed for family therapy and home visits. Accordingly, the state argues that the trial court's disposition is not the restrictive, unforgiving, cruel and unusual punishment that L.C. claims.

Finally, the state notes that L.C. had already received the benefit of probation and referrals to community services after his first adjudication for a firearm crime and was still on probation when he committed the aggravated assault with a firearm.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Johnson*, 56,043 (La. App. 2 Cir. 1/15/25), 403 So. 3d 679.

A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *State v. Allen* 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. On review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307.

Vast discretion is afforded to courts in juvenile matters due to the special nature of the proceedings. *State ex rel. A.M.* 07-1228 (La. App. 4 Cir. 4/9/08), 983 So. 2d 176. In a juvenile delinquency proceeding, a juvenile court is vested with broad discretion to arrive at solutions balancing the needs of the child with interests of society. *State in Int. of G.S.*, 19-0605

11

(La. App. 4 Cir. 12/4/19), 287 So. 3d 752, *writ denied*, 20-00033 (La. 9/8/20), 301 So. 3d 34.

Under Louisiana Children's Code Article 901(C), commitment to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exist:

> (1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.
>
> (2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.
>
> (3) A lesser disposition will deprecate the seriousness of the child's delinquent act.
>
> (4) The delinquent act involved the illegal carrying, use, or possession of a firearm.

The factors under Article 901(C) are identical to the sentencing factors under Louisiana Code of Criminal Procedure Article 894.1(A) except that Article 901 adds the additional factor for judicial dispositions if the delinquent act involved the illegal carrying, use, or possession of a firearm.

The sentencing range for aggravated assault with a firearm carries a maximum sentence of ten years with or without hard labor, a maximum fine of $10,000, or both. In this case, the three-year sentence fell well within the sentencing range.

We note that L.C. committed the aggravated assault with a firearm in April 2024, while already on probation for a firearms charge. A motion to revoke his probation was on the docket on the day of his trial. Furthermore, the state had previously notified the court that it would be filing a new petition on the charge of unauthorized use of a motor vehicle.

12

From the record before us, it is reasonable to conclude that the trial court found an undue risk L.C. would commit another crime if once again given a suspended commitment or probation. Indeed, L.C. had been given the benefit of probation and community resource referrals after his prior adjudication, and he committed the instant crime while still on probation.

Louisiana appellate courts consistently uphold custodial dispositions when firearms are involved. In *State in Int. of C.P.G.*, 53,038 (La. App. 2 Cir. 8/27/19), 278 So. 3d 1095, this court upheld a disposition of five years in secure care for a negligent homicide involving a firearm. In *State in Int. of C.T.*, 15-1864 (La. App. 1 Cir. 4/15/16), 195 So. 3d 70, *aff'd*, 16-0939 (La. 10/18/17), 236 So. 3d 1210, the First Circuit Court of Appeal upheld a disposition committing the juvenile until he turned 21 for adjudications of illegal possession of a stolen firearm and unauthorized use of a motor vehicle. In *State in Int. of D.S.*, 11-416 (La. App. 5 Cir. 12/28/11), 83 So. 3d 1131, the Fifth Circuit Court of Appeal upheld a disposition of three years in the custody of the Office of Juvenile Justice for an adjudication of armed robbery.

We also note that the three years of secure care is not quite the draconian penalty L.C. makes it out to be, as the trial court's custody order contains provisions for nonsecure custody and allows for family therapy, home visits, and community resource referrals to assist in L.C.'s release and return to home.

L.C.'s disposition of three years in secure care fell comfortably within the sentencing range for aggravated assault with a firearm and the trial court did not manifestly abuse its discretion in imposing it. A lesser disposition would deprecate the seriousness of this firearm-involved offense, and L.C.'s

13

history suggests that probation would not deter him from committing another crime. The trial court's disposition strikes an appropriate balance between the interests of society and the needs of L.C. This assignment of error is without merit.

## ERROR PATENT

In reviewing the record for error patent, we note that, at the time of disposition, the juvenile court failed to advise L.C. of the time period within which to apply for post-conviction relief.

The Louisiana Children's Code provides no procedures regarding post-conviction relief. When the Children's Code is silent, the provisions of the Code of Criminal Procedure are applicable. *State in Int. of D.M.*, 51,920 (La. App. 2 Cir. 1/10/18), 247 So. 3d 133; *State in the Interest of W.A.P.*, 52,779 (La. App. 2 Cir. 5/22/19), 274 So. 3d 690. La. C. Cr. P. art. 930.8(C) states, in part, that, "At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing." Therefore, the juvenile court was required to inform L.C. of the time limitation for seeking post-conviction relief. If the trial court fails to advise, or provides an incomplete advisal, pursuant to La. C. Cr. P. art. 930.8, the appellate court may correct the error by informing the defendant of the applicable prescriptive period for post-conviction relief. *State in Interest of D.M., supra*.

Therefore, by way of this opinion, the juvenile is advised that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of adjudication and disposition have become final under the

provisions of La. C. Cr. P. arts. 914 or 922. *See State in Int. of D.M., supra; State in the Int. of W.A.P., supra*.

## CONCLUSION

Based on the foregoing, the juvenile's adjudication as delinquent and subsequent disposition are affirmed.

**AFFIRMED.**